## Hampton *versus* Commonwealth.

1. An act was passed authorizing the extension of a street in Pittsburgh, and providing for the assessment of the damages on lots *in the vicinity of the extension*. The damages were assessed, and the report of the viewers was confirmed. Before a proceeding had taken place to recover the damages, the act authorizing the extension *was repealed*. Subsequently a *scire facias* issued to recover the damages assessed:

It was *held*, that the repeal of the act before the street was opened put an end to the opening of the street and rendered *void* all the proceedings under it; and that the parties in whose favor damages had been assessed could not recover the compensation reported in their favor.

2. The transaction in this case is not to be considered as *a contract;* the taking of property by the Commonwealth for public use is in virtue of her right of eminent domain. But, if it were *a contract,* the consideration failed by the repeal of the act authorizing the opening of the street.

ERROR to the Common Pleas of *Allegheny County.*

This was a proceeding to June Term, 1852, in the name of the Commonwealth of Pennsylvania, for use of John Irwin and Joseph Tomlinson v. Wade Hampton. It was a *scire facias* on a report of viewers made to June Term, 1850, and its object was to recover of the defendant $173, charged upon a lot owned by him in the proceeding to open Hancock street, in the city of Pittsburgh. The defence was, that the act providing for the opening of the street was repealed before the *scire facias* issued. A case was stated in the nature of a special verdict.

The act providing for the extension of Hancock street, passed on 6th April, 1850—*Acts of* 1850, pp. 388–9. In accordance with its provisions, and on petition, the Court, on the 4th May, 1850, appointed seven viewers to view the ground over which it was pro-

[Hampton *v.* Commonwealth.]

posed to extend Hancock street. The Act of Assembly required
the viewers, if they should decide in favor of such extension, to
locate said Hancock street forty feet wide, from Penn to Liberty
street, and also to ascertain and determine what damage to private
property was likely to be done by the extension of said street, and
to designate in their report the person or persons entitled to re-
ceive the same; and also to ascertain and determine what lots in
the vicinity of said extension would probably be benefited by the
opening of said street, *and to divide and apportion the amount
that each should separately contribute* to defray the damages incur-
red, &c.

The viewers appointed by the Court filed their report on the
15th day of June, A. D. 1850; and, *inter alia*, upon the property
belonging to the defendant, described in the *scire facias*, was
assessed $173, it being in the opinion of the viewers benefited to
that amount by the extension of said street.

The Act of Assembly provided further, that if the report of the
viewers was confirmed by the Court, it should be entered of record,
and henceforth that part of Hancock street should be deemed and
taken to be a lawful public street.

The report of the viewers, after argument, was confirmed by
the Court on 4th day of January, 1851. Upon this confirma-
tion, a writ of *certiorari* was sued out by the parties interested,
and on the — day of Sept. 1851, the proceedings of the Court
below were duly affirmed by the Supreme Court. See report of
the case in 6 *Harris* 26, the opinion being delivered Sept. 11,
1851.

The 9th section of the act authorizing the extension of said
street, provided that the damages so assessed should remain *a lien*
upon the lots benefited by the extension of said street until paid,
and if not paid within six months after the approval and confirma-
tion of said report by the said Court, process might issue in the
nature of a *scire facias*, upon a mortgage for the collection thereof,
&c. This writ was issued to enforce the collection of the amount
assessed upon defendant's property.

The owners of real estate appropriated for the extension of said
street, after the confirmation of the report of viewers by the
Court, accepted the judgments or liens adjudged upon the pro-
perty reported to have been benefited thereby, as compensation
for their property thus taken, and arrangements were made for
the collection of the same.

The defendant alleged that he was not bound to pay said assess-
ment, because on the 26th day of Feb. 1852, an Act of Assembly
was approved, the sixth section of which, *inter alia*, provided that
the sections of the Act of 1850 be and the same are hereby re-
pealed, so far as Hancock street is concerned. *Acts of* 1852,
p. 85.

[Hampton v. Commonwealth.]

M'CLURE, J., concluded his opinion as follows:—

"That Hancock street has not been opened, or that the public has relinquished its easement so soon, is not through any act or agency of the plaintiff; he has been passive all along—took no exceptions to the report of viewers, and, like all others where private property is taken for public use and compensation made, is compelled to submit.

"This is a contract of the most solemn and imposing character, made by the Legislature, and through the legal instrumentality of viewers consummated, confirmed by the Court below, and ratified by the Supreme Court. The plaintiff had acquired a vested right to his damages, and the subsequent discontinuance of Hancock street did not divest or defeat that right. The removal of the lien or encumbrance of the street, whether opened and used or not, gives an enlarged enjoyment to the owner of the fee; but this enlarged enjoyment is not a purchase from the public, but an incident of ownership, with which the tenant in fee never parted. The discontinuance of the highway is a new, distinct, substantive proceeding, which does not annul or disaffirm the former proceedings. The repealing act does not impair the obligation of the contract; such an act would be unconstitutional and void: 22 *Pickering* 263, Harrington *v.* County Commissioners; 4 *Barb.* 64, People *v.* Supervisors, and cases there cited; *Const. U. S.* art. 1, sect. 10.

"I am of opinion that the record in this case establishes, 1. That there was a contract not merely executory, but executed. 2. That the rights of the plaintiff were vested, so soon as the damages were assessed. 3. That the defence falls within the inhibition of the Constitution of the United States against a State passing laws impairing the obligation of contracts.

"Therefore—Judgment in favor of the plaintiffs and against the defendant, for $173, the sum assessed, with interest from June 15th, 1850, the date of filing the report; and costs."

*Hamilton*, for plaintiff in error.—Proceedings cannot be pursued under a repealed statute: 4 *Yeates* 392. If a proceeding were *imperfect* under an act repealed, it cannot be completed afterwards: 1 *Watts* 228; 1 *Wh.* 258; 10 *Watts* 351.

The street was not actually opened, or the plaintiffs disturbed in the possession of their property when the repealing act was passed. The proceedings were inchoate and incomplete, and consequently the public did not acquire a title to the premises, or the plaintiffs a vested and complete right to the damages claimed in this action.

*Bigham*, with whom was *Leslie*, for defendants in error.—It was contended, *inter alia*, that the repeal of a statute does not divest

[Hampton *v.* Commonwealth.]

any rights acquired under it while in force: 2 *Southard* 689; *Breese* 29; 2 *Har. & J.* 41; 2 *Stew.* 160; 1 *Howard's Miss.* 183; 6 *Shepley* 109.

It was contended that on the confirmation of the report of the viewers assessing the damages, the plaintiffs in error acquired an absolute vested right to the liens on the property supposed to be benefited by the extension. The report was confirmed absolutely on 4th January, 1851, above a year before the repealing act was passed. The case stated admits that Irwin and Tomlinson accepted the liens as a compensation for their property which was then taken for public use: 22 *Pickering;* 4 *Barbour* 76, People *v.* Supervisors. If the interest were *vested,* it falls within the inhibition of the Constitution against passing laws impairing the obligation of contracts: 4 *Barbour* 79, 80. The legislature may change their intention before the land is taken, but after it is taken, the contract is so far executed that the rights of the parties cannot be affected by the repeal of the original act: 6 *Cranch* 87; 7 *Id.* 164; 9 *Id.* 43; 4 *Wheaton* 518, Dartmouth College *v.* Woodward; 17 *Johns.* 195; 13 *Conn.* 87. In *penal* statutes, a repeal will release the penalty. In acts *conferring jurisdiction,* if the act be repealed before anything is done under it, or where jurisdiction has been taken from one body and vested in another, something still remaining to be done before any interest has finally vested, either an actual repeal of the act, or a virtual repeal by giving exclusive jurisdiction elsewhere, may defeat the proceedings then pending. These are peculiar cases not falling within the protection of the Constitution of the United States.

The opinion of the Court was delivered, October 7, by

BLACK, C. J.—The Legislature authorized the extension of Hancock street in 1850. One of its provisions was, that the damages done to private property should be ascertained and apportioned among the different lots which would be benefited by the opening of the new street. This was done, and part of the damages were assessed on the lots of the plaintiff in error. But before the street could be opened, and before the lien which the report of viewers created on the lots was ripe for a *scire facias,* the Act of Assembly was repealed. Of course this puts an end to the opening of the street, and the question before us is whether the parties who would have been injured by it can recover the compensation to which they would have been entitled if the repealing act had not been passed.

The Act of 1850, which directed that property should be taken from one man and paid for by another at prices adjusted without the consent of either, was an exercise of the highest sovereignty which the government of a free state possesses. The taking can be justified, because the taking was for public purposes; and the

[Hampton v. Commonwealth.]

provision for payment was not unconstitutional, because the private advantage gained by the adjacent lot-owners was a fair equivalent for all they were required to give. But a law which would take the property of Irwin without compensation, or require Hampton to pay for the benefit of a street which was never to be opened, would be mere robbery, which no department of this government has any right to commit. The Act of 1850, taken together with the repealing Act of 1852, amounts to a law which commands the payment of money by one of the parties for an advantage which it forbids him to enjoy. That such a thing can be done by two Acts of Assembly any more than it could be by one, is a proposition to which no sophistry can give even a plausible appearance. That a law may be passed to take the money, land, or goods of one private citizen and give them to another, with a provision for compensation which is repealed before it is carried into effect, cannot be sustained at all. The Act of 1850 for opening the street, would have been a plain violation of the constitution, if it had not provided that the property taken should be paid for. It would have been no better, but rather worse, if it had ordered money to be paid for the improvement without ordering the improvement to be made. The validity of one part of the law depends on the other. When, therefore, one part of it was repealed, the other followed as a matter of course, for it could not stand alone.

But the Legislature does not seem to have contemplated this injustice. The whole law is repealed "so far as Hancock street is concerned." It is in vain to say that this does not refer to the Act of 1850, or that it is not in its terms a repeal of the whole act. The only ground on which the defendants in error can now demand the compensation is, that though the Legislature might take away from their adversary the benefit he was to receive, yet it exceeded the power of the state to deprive them of what they call their vested rights. But the rights of neither party could be vested unless both were vested, and one being divested by the repeal the other has no existence. This question would probably have been understood very differently, if the Legislature had chosen to prevent the damages from being paid instead of arresting the execution of that part of the law which required the opening of the street.

It is said that the opening of the street would have given the public only an easement in the land, and would not have deprived the owners of their right to the soil. This is true, but I do not perceive how it adds anything to the strength of the argument. If a mere encumbrance on the soil was to be the equivalent of the plaintiff in error for his money, he was entitled to that at least. It would be no worse to make him pay for land without getting it than to compel him to pay for anything else which he does not receive.

[Hampton *v.* Commonwealth.]

It is also urged, that the defendants in error have suffered inconvenience and loss, not in consequence of the street being opened, for it was not opened, but because the opening of it was threatened. But the other party was not to blame for this. On the contrary, they seem to have been common sufferers in all the trouble occasioned by this law. The threat to take one man's property is not much worse than the threat to make another pay for it. But the loss that follows from such a cause can not be the foundation of a legal claim. It is *damnum absque injuriâ*.

Another argument is, that this street might be opened, paid for, and then abandoned, in which case the parties who paid for it would be in no better condition than they would be by having it abandoned first and paying for it afterwards. Whether a street paid for by private individuals could be closed without their consent, is doubtful; but it is very sure that the closing of it would release all damages assessed against private parties and remaining unpaid at the time.

This transaction is put by the Court of Common Pleas on the footing of *a contract* between the parties. There is no definition of a contract that will include it. The state takes private property for public use in virtue of her right of eminent domain. She is bound to pay for it, but instead of making compensation out of the public treasury, she, in this case, ordered it to be assessed on the contiguous property, and this was an exercise of the taxing power. It was all done by one Act of the Legislature, and that act was all repealed—the part which authorizes the taking of the property, the portion which gives the right to compensation, and that which imposes the tax. The last was as clearly repealable as the rest.

But assume it to be *a contract*. Let it be supposed that the plaintiff in error covenanted to pay a certain sum in consideration of the additional value which would be given to his lots. If the street is not opened the consideration fails, and then what becomes of the contract? Equity will always relieve against a contract when an unforeseen accident, such as the interference of the Legislature, has rendered it impossible for both parties to perform it. It will scarcely be said that a contract, the execution of which is forbidden by equity and good conscience, is within the inhibition of the constitution. The obligation of such a contract could not be impaired for it has no obligation.

The cases decided in Massachusetts and New York, and cited in the argument, show that in those states the county is held liable to pay the price of land taken for a public highway, even though, after it is taken, the authority having jurisdiction of the subject change their intention and abandon or discontinue the road. Where the public makes a contract for land at a certain price,

[Hampton *v.* Commonwealth.]

and takes it, as in the case of The People *v.* Westchester, 4 *Barb.* 76, their subsequent discontinuance of its use would not discharge the obligation to pay for it. But that is not this case. Here the land was never taken; and what makes a still clearer distinction, the party from whom the price is demanded is not the party that abandoned it. If the opening of the street had depended on the will of the plaintiff in error, and he had voluntarily determined not to have it opened, the case would have been wholly different in principle.

We cannot have the least hesitation about saying that, inasmuch as this claim could only be asserted on the ground that the law gave the plaintiff in error an equivalent for the money he was required to pay, the act taking away that equivalent released him. The repeal of the law, at any time before the street was opened, rendered all the proceedings under it void from the beginning. It is as if no such law had ever been passed. If the repeal had come after judgment rendered and after execution issued, it would have struck dead the process in the hands of the sheriff.

Judgment reversed and judgment on the case stated in favor of the defendant.