# Ohio River Junction Railroad Company *v.* Pennsylvania Company, Appellant.

*Evidence—Unstamped instrument in writing—Effect of the repeal of the stamp law—Act of Congress of June 13, 1898, and April 12, 1902.*

An instrument in writing executed but not stamped while the act of congress of June 13, 1898, 30 Statutes at Large, 448, was in force, became immediately admissible in evidence, when the stamp act was repealed by the act of April 12, 1902, 32 Statutes at Large, 96, without reservation of right thereafter to demand the tax in cases where the stamp had been omitted from instruments executed during the period the act was operative, or enforce any of the penalties or forfeiture which the act provided should follow a disregard of its provisions.

Where objection is made to the admission in evidence of an unstamped instrument, the burden is upon the person making the objection, to show that the stamp had been omitted with intent to evade the act of congress.

*Ejectment—Possession—Evidence—Burden of proof—Vendor and vendee—Contract.*

Where a vendee of land brings an action of ejectment against a stranger to the agreement of sale, and has shown possession in himself, the law will refer the possession to the contract as understood and interpreted by the parties themselves. In such a case it is essential to recovery by plaintiff that he should show his possession of the land when entry thereon was made by the defendant, and to effect this he is entitled to show whatever circumstances by way of occupancy that tended to establish it. When he has thus shown possession, and that subsequently he had been forcibly dispossessed by the defendant, the latter will then be called upon to show his right to the possession.

*Vendor and vendee—Outstanding agreement of sale—Notice—Duty of inquiry.*

Whatever puts a party upon inquiry amounts in law to notice, provided the inquiry becomes a duty, as in case of purchasers and creditors, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding.

It is always the duty of a purchaser of real estate to investigate the title of his vendor. He cannot be said to exercise due diligence in this regard if he accepts the statement of his vendor as to binding effect of an outstanding agreement of sale with another, and makes no attempt to ascertain for himself what the agreement contains.

*Ejectment—Purchase money—Tender.*

Where a vendee under articles of sale brings an ejectment against a stranger to the articles, who had ousted him from possession, the defendant is not entitled to receive purchase money from the plaintiff under any circumstances. Therefore no tender is necessary, nor is it necessary that plaintiff should have the money due to his vendor present in court. The defendant must look to his grantor for reimbursement for what he paid for the defective title. In such a case the plaintiff's equitable title is sufficient to enable him to sustain the action.

Argued Oct. 14, 1908. Appeal, No. 45, Oct. T., 1908, by defendant, from judgment of C. P. Beaver Co., June T., 1906, No. 332, on verdict for plaintiff in case of Ohio River Junction Railroad Company v. Pennsylvania Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Ejectment for land in Rochester township. Before THOMAS, P. J., specially presiding.

At the trial it appeared that both parties claimed title from one J. E. Herrold.

The court charged in part as follows:

It seems that on December 18, 1900, Mr. J. E. Herrold entered into a contract with one George I. Park for the sale of this land. That contract or article of agreement has been read in your hearing, and it provides, as we recollect it, that Mr. Park was to pay $3,500 for the land; that he paid $25.00 down at the time, and that the article of agreement was entered into and signed by all of the parties, by the provisions of which Mr. Park was to pay the balance of $3,475 within thirty days, or at such time as a good deed should be delivered to him by Mr. Herrold. It also provided that at the end of thirty days, or upon January 18, following, Mr. Park was to have possession of the land. And that if there was a failure to pay according to the terms of the contract, after the term of sixty days certain legal proceedings might be had, by virtue of which Mr. Herrold would have the right to enforce his claim, to gain possession of the land.

It appears according to the testimony that no tender of the purchase price was made, or offer of a deed by Mr. Herrold to

Mr. Park until possibly March 14, following, when Judge Holt, who at that time was counsel for the plaintiff company, the Ohio River Junction Railroad Company, and on behalf of that company and by virtue of means furnished by them to him, went to the home of Mr. Herrold and made a tender of the balance due, together with interest from thirty days after its date to the date of the tender; and Mr. Herrold refused to accept the tender, and did not at that time, or at any other time, as we understand, make a tender of any kind of deed good or otherwise. The plaintiff offers testimony to the effect that George I. Park was at the time the purchasing agent for the plaintiff company; and he says he was acting for and in behalf of the plaintiff company in this transaction, and that he procured the assistance of Mr. Noss, a real estate agent, I believe, in procuring the contract. Mr. Noss testifies that he was engaged by Mr. Park, and that Mr. Park furnished to him the $25.00 that he paid as hand money. There is testimony to the effect that upon December 19, according to the terms of this contract, Mr. Park was to have possession on January 18, 1901, or thirty days after the contract. Mr. W. A. Park testified that he had a contract with the plaintiff company for the construction of certain portions of its line; that the engineer for that company staked out tracks, beginning as I gathered it, on December 21, 1900, and that by January 19 he had the tracks staked out; and that there was some additional work to be done before February 5, when the plaintiff company, by its duly authorized officers, accepted the report of the engineer and adopted it. He testifies that these stakes were driven at that time, and that he as contractor began work as we remember it, on March 21, 1901; and shortly after he had begun work, the employees of the defendant company came on and tore up their tracks and dispossessed them; and that the plaintiff has been out of possession from that day until this, and that the defendant is in possession at the present time, and as I gather it, has been in possession during the time from that time until the present.

The defendant relies upon a title which also came from Mr. Herrold. Mr. J. D. Strock testifies that he was acting for the defendant company, the Pennsylvania Company, in an at-

tempt to, and I believe successfully, make purchase of this land in 1901. That he went to the home of Mr. Herrold possibly on February 23, 1901, and there entered into an agreement with him for the purchase of this land; that he was acting for the Pennsylvania Company at this time, and that what money he paid—and as I gather, it was subsequently paid for the land— was paid by the Pennsylvania Company. That pursuant to the article of agreement entered into with Mr. Strock, a deed was made to William Jackson on March 8, 1901, and Mr. Jackson, formally reciting that he had taken title as trustee for the Pennsylvania Company, and pursuant to that, conveyed the title in him to the defendant company on March 13, 1901.

There is testimony to the effect that the defendant company or its lessor located a line across the Herrold lands in 1898; and that it has since that time built a road across this land. Evidence has been offered showing that the right of the defendant company to a right of way across this land, at least, has been adjudicated; and it is not contended, as we understand, on the part of the plaintiff, but that the defendant company or its lessor has an easement, that is, a right to maintain a railroad across this land, but denies that it has title to the land, or has any right to the balance of the five acres, other than that which is occupied by its road and the necessary width of land accompanying it.

It appears that the branch which the defendant occupies extends along the east side of the Beaver river, and was located there, I believe, in 1898, and was occupied by the defendant company. That question has been adjudicated, and they would have the right to the easement in that land for railroad purposes, and it not being shown the width taken, it would be presumed that would be the width allowed by law, sixty feet, along the river, and the place where they now have their railroad located.

The article of agreement which Mr. George I. Park received was not acknowledged by Herrold and his wife, nor was it acknowledged by Park at the time when it was executed and delivered, according to his testimony. Some time thereafter and upon the day when Judge HOLT says in his testimony that he

made the tender to Mr. Herrold, it appears that certain pro-
ceedings were taken for the purpose of having this Herrold-
Park article of agreement probated, so that it could be placed
of record. We say to you as matter of law that the probate
of that article of agreement, and the placing of it upon the
records was not sufficient to give notice to any person of the
ownership of that land, or the terms of that article of agree-
ment. In our view of the case, the law was not so complied
with as to entitle that article of agreement to be placed of rec-
ord; and having been spread upon the record without legal
authority, it was not notice to anybody. The purpose of re-
cording an instrument is solely for the purpose of giving no-
tice; and if a party has notice without the record, such party
is bound just the same as if the instrument were upon the rec-
ord. If the instrument is duly recorded, notice is visited on
all parties, whether they have actual notice of the contents of
the instrument or not. But if it is not recorded, if a party has
notice of the instrument,—and I do not now mean that he
has notice of it by hearing a rumor of it, or something of that
kind,—but if he has notice of the instrument being given, or
has notice of its contents by one of the parties interested, then
such party is bound, the same as if he had examined the in-
strument; for it was his duty to examine what it contained.
Again, a person buying land is obliged to take notice of what
is going on upon it; if he buys land from one person, and some-
body else is in possession of it he is put upon inquiry, and is
obliged to know by what authority such other person is there
in possession. There is some evidence in the case as to whether
or not when Mr. Strock obtained title, or entered into this
article of agreement with the Herrolds, he had notice of the
title which Mr. Park had secured and secured for and in be-
half of the plaintiff company. Mr. Strock says that Mr. Her-
rold told him he had entered into the agreement with Mr. Park,
but that it was for sixty days, and that the time had expired.
If Mr. Herrold told Mr. Strock that he had entered into the
article of agreement with Mr. Park, it was his duty to deter-
mine the terms and conditions of that agreement; and if he
chose to rely upon a legal interpretation of it by Mr. Herrold

or anybody else, that was his risk, and what he did acting for the Pennsylvania Company bound the Pennsylvania Company. Therefore, did the Pennsylvania Company acquire this title with notice of the contract with Park.

There is some other evidence of notice upon the ground. It appears that in January, or possibly in December, December 21 according to W. A. Park's testimony, the engineer of the plaintiff company began driving stakes upon this ground. Was there such a condition of affairs there as to give notice to a person going upon the ground that somebody was in possession, or claiming title? As I understand, or recollect the testimony, it appears that Mr. Herrold was living on this five acres of land at the time. Now, was there anything there that should have given Mr. Strock as a reasonable man notice that somebody else, other than Mr. Herrold, was in possession, or claiming possession? If there was, or was not, is for you, gentlemen, to determine. And if there was such an indication of possession, it was the duty of the defendant company's agent to determine by what authority or right the person having that possession claimed to have it.

Something has been said in your hearing with reference to the plaintiff company not taking possession of the Herrold property by virtue of the contract made with George I. Park, but that it was by virtue of their right to locate the railroad, and condemn the land.

The testimony offered showing the action of the plaintiff company with reference to locating its switches, yards, and roundhouse, was presented before you, gentlemen, and that included, as we understand it, lands which were at that time owned by divers persons; and there were directions by the duly authorized officers of the plaintiff company that the proper officers should proceed to acquire title.

A railroad company may acquire title by what is known as the right of eminent domain; but it is not obliged to do that. The railroad company can make agreement with the owners of the land, or buy an easement in the land, or the fee,—buying the land outright if they so agree. And if George I. Park was actually negotiating for and took this property for it in

behalf of the plaintiff company, the title thereto would be in it.

[Something has been said with reference to the plaintiff being obliged to tender the purchase money, and keep that tender good, and bring it into court. As we view this case there is no duty on the part of the plaintiff company to do that, as to this defendant company. As between this plaintiff and Mr. Herrold there are different rights. But as we interpret the instrument given by Herrold to Park, Park had thirty days, or until Herrold tendered him a good deed, to make this purchase, to make the payment; and that he could not proceed against Park in any event until, I believe, ninety days,—or sixty days after the thirty days expired, if I correctly remember the terms of the contract. And within that time, and before Herrold would have a right to proceed, it is alleged that the plaintiff company, following the contract with Park, made a tender, but failed to receive a deed, and that they will answer to Herrold as to that at any time he attempts to enforce his rights, or when he presents a deed.

However, if the plaintiff had this article of agreement, and the defendant had no notice of it, such as we have indicated in our charge, the defendant could take title and would acquire a good and valid title as against the plaintiff when it purchased the land of Herrold; and the plaintiff then will have to settle as to any damages to it because of that, with Mr. Herrold. But if the defendant had notice, and went on notwithstanding that notice, and purchased of Herrold, it would not take title as against this plaintiff, and then, for any damage the defendant has sustained the defendant and Herrold may settle.] [5]

It is a question of notice, as we view the case, chiefly of notice, and also as to what was done to give the notice, and what was done by the parties, and for whom they were acting. If George I. Park was not acting for the plaintiff company, or if he was so acting and the plaintiff company never ratified or accepted that,—either one,—the plaintiff would not acquire title any way.

[If you find under the instructions we have given you, and

all the evidence in the case, that the plaintiff has title, and that whatever title the defendant took it took with notice of that title in the plaintiff, you will find a verdict for the plaintiff for the land described in the writ of ejectment, subject, however, to an easement in behalf of the defendant company, and you will describe what that easement is. As we remember it is an easement of right of way for a railroad along the east bank of the creek or Beaver river, and across this land; and it would be for sixty feet in width, and at the place where their right of way is now located. If the plaintiff is entitled to recover at all, it will be for the land described in the writ, subject to the easement in the land; and you will describe where that easement is.] [6]

Defendant presented these points:

1. Under the law and the evidence the verdict must be for the defendant. *Answer:* Refused. It is a question for you. [1]

2. The alleged agreement of December 18, 1900, between John E. Herrold and George I. Park, and under which plaintiff claims title, is not sufficiently stamped as required by the act of congress in force at the time of its execution, is not admissible in evidence, and should be disregarded by the jury. *Answer:* This point is refused. It cannot be entirely disregarded by you, in view of the admission made, and we will refer to this in the answer to the next point. [3]

5. Under the pleadings and evidence plaintiff's claim, if any, in this case, would not be more than an equitable title, and in no event could plaintiff recover, without having the money in court ready to be paid in the event of a verdict in its favor. *Answer:* This point is refused. [4]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1, 3-6) above instructions, quoting them.

*George B. Gordon* and *James L. Hogan,* with them *John M. Buchanan,* for appellant.—Revenue stamps are undoubtedly necessary on the agreement of sale upon which plaintiff based its right to recover the land. It purports to create or vest in

George I. Park an interest in or title to the land and falls within the class of instruments requiring internal revenue stamps: Chartiers and Robinson Turnpike Co. v. McNamara, 72 Pa. 278.

Where the possession of the vender is lawful, his vendee cannot maintain ejectment against him without proof of the purchase money: Bell v. Clark, 111 Pa. 92; Dwyer v. Wright, 162 Pa. 405.

It is not necessary to sustain a conditional verdict in equitable ejectment that there be a contract directly between the parties: Riel v. Gannon, 161 Pa. 289; Donovan v. Driscoll, 12 W. N. C. 203.

*Frank H. Laird,* with him *J. Rankin Martin,* for appellee.— The agreement was properly admitted: Chartiers, etc., Turnpike Co. v. McNamara, 72 Pa. 278; Roney v. Westlake, 216 Pa. 374.

In the case at bar there was delivery of possession; a tender of the full consideration and a forcible and tortious dispossession of the vendee. This court in a long line of cases has said, that in such a case the vendee is neither obliged to make a tender or to have the money in court, to answer to the verdict: D'Arras v. Keyser, 26 Pa. 249; Harris v. Bell, 10 S. & R. 39.

OPINION BY MR. JUSTICE STEWART, January 4, 1909:

This was an action in ejectment. The plaintiff rested its right of recovery on an article of agreement for the purchase of the land in dispute with John E. Herrold, under whom the defendant also claimed, executed December 18, 1900. When the agreement was offered in evidence objection was made that it was not stamped in accordance with the requirements of the act of congress of June 13, 1898, 30 Statutes at Large, 448. While the paper did bear a revenue stamp, it was admittedly inadequate in amount. The court overruled the objection, and admitted the paper without giving any reason for the ruling. The record leaves us to conjecture as to what the reason was, or find a sufficient one for ourselves; and the argument for the appellee gives us no aid. To secure observance of its requirements with respect to tax on instruments of this character, the

act of congress then in force provided that except as they were properly stamped they should "not be competent evidence in any court."

I. The question whether the disqualification here put upon an unstamped agreement as a matter of evidence, was intended to operate in state as well as federal courts; and if so, whether to this extent, congress did not assume a power not warranted by the constitution,—a question in regard to which there are conflicting decisions,—does not here call for consideration. The provision of the act of Congress of June 13, 1898, which imposed a tax upon instruments of this character, was repealed by act of April 12, 1902, 32 Statutes at Large, 96, without reservation of right thereafter to demand the tax in cases where the stamp had been omitted from instruments executed during the period the act was operative, or enforce any of the penalties or forfeitures which the act provided should follow a disregard of its provisions. Without question the provision in the act putting a disqualification upon unstamped instruments as evidence, is penal in its character; it contemplated, as a penalty to be suffered for a violation of the law, the forfeiture of what is an unquestioned right in every individual, to use his written agreement with another as evidence in any court, to support whatever claim he might be there asserting under it. In this forfeiture the government could have no vested right; nothing could accrue to it from its enforcement. The rule which applies in such cases, is thus stated in Endlich on Interpretation of Statutes, sec. 478, "Where an act expires or is repealed, it is, as regards its operative effect, considered, in the absence of provisions to the contrary, as if it had never existed, except as to matters past and closed. As to all future matters, all steps yet to be taken, the repealed statute upon which they are based, is treated as utterly obliterated;" and in sec. 479, "Actions in their nature penal, pending at the time of the repeal of the statute authorizing them, fall with it. . . . A fortiori must such be the result where, though the liability has arisen, no proceeding has been taken for its enforcement. And the same rule applies to all proceedings, whether civil or criminal, going on by virtue of a statute at the time of its repeal.

Whenever the jurisdiction exercised in proceedings, depends wholly upon the statute, and the statute is repealed, or expires by its own limitation, the jurisdiction is gone, and with it the whole proceeding, imperfect at the time of the repeal or expiration, falls to the ground, unless there be a reservation as to pending rights or causes." The rule thus stated finds support in our own cases: North Canal St. Road, 10 Watts, 351; Fenelon's Petition, 7 Pa. 173; Hampton v. Com., 19 Pa. 329; Uwchlan Twp. Road, 30 Pa. 156. Its application to the case in hand is too obvious for discussion. The ruling of the court in admitting the agreement in evidence could be rested on the unqualified repeal of the statute imposing the tax, without more. But there is another quite sufficient reason which for aught we know may have been what prevailed with the court. The penalties and forfeitures prescribed in the act of 1898 will be found to be the same as those contained in the earlier internal revenue act of June 30, 1864. The case of McGovern v. Hoesback, 53 Pa. 176, arose under this earlier act; and in that case as in this, objection was made to the admission in evidence of an unstamped instrument. This court decided that although the instrument there fell within the tax law, yet because there was no evidence that the stamp had been omitted with intent to evade the act of congress, it was properly admitted; that it was only instruments made with such intent that the law avoided. The decided weight of opinion in those states where the matter had been considered in connection with the later act, accords with the view expressed in the case just cited; and in all the cases where this view is held, the burden of proving the fraudulent intent is put upon the party objecting. The decisions of the several state courts with respect to this question are fully collated in 22 Cyc. of L. & P. 1621.

II. If the question here was between a vendor and vendee as to the time when possession was to be given the vendee under the written contract, it might be argued that by fair intendment payment of purchase money was to be a condition precedent.

While the vendee is here a party to the action, his controversy is not with his vendor, but with a stranger to the agree-

ment. Where this is so, and possession has been shown in the vendee, the law will refer the possession to the contract as understood and interpreted by the parties themselves. It was essential to a recovery by plaintiff that it should show its possession of the land when entry thereon was made by the defendant. The question of plaintiff's possession was one of fact, and it was entitled to show whatever circumstances by way of occupancy that tended to establish it. There was quite enough shown to require a submission of the case to the jury. Plaintiff having shown its contract of purchase with the admitted owner of the land, and having offered evidence to support its claim that possession had been taken thereunder, and that subsequently it had been forcibly dispossessed by the defendant, the latter was called upon to show its right to the possession. This it attempted to do by producing in evidence an article of agreement for the sale of the identical land between Herrold and defendant's agent or representative, J. D. Strock, dated February 23, 1901, and a deed from Herrold and wife in execution of this agreement dated March 8, 1901, to one William Jackson, who also represented the defendant and who subsequently conveyed the premises to defendant. It is to be remarked that each of the parties, in its negotiations with Herrold, acted through a third party as its representative, even allowing the representative to be named as the grantee in the conveyance. It is a circumstance not affecting the rights of either, and only remarked upon here to secure a correct understanding of the facts. Plaintiff's agreement of purchase antedated that of defendant's by more than two months and a half. Assuming that plaintiff had forfeited none of its rights under its contract with Herrold through any default,—and the jury under proper instructions from the court, found this to be the case,—it at once became a question whether defendant was an innocent purchaser without notice. The contract between Herrold and the plaintiff had not been attested or proved in such a way as to entitle it to be made matter of record; yet it had in fact been recorded. Very properly the court ruled that the record of it could not be received in evidence to affect the defendant with notice. Strock, the agent of the defendant, in making the

purchase, testified that in the course of his negotiations with Herrold, the latter told him that he had sold the property to Park (who was the plaintiff's agent in the matter) by article of agreement, but that the agreement had expired; that he asked to see the contract and that Herrold told him that it was in the possession of the other party; that he, Herrold, did not know what it was, but that the price was $3,500. Strock further testified that he entered into the article of agreement with Herrold, relying upon the latter's statement that the earlier contract with Park had expired five days before. Judged by its terms, the Park contract was still in force at that time; and there is no evidence that Herrold had ever claimed any right to rescind it. On this state of the evidence, the defendant not attempting any qualification of Strock's admissions, the court might well have decided as a matter of law that the defendant had at least constructive notice of the sale to Park. "Whatever puts a party upon inquiry amounts in law to notice, provided the inquiry becomes a duty, as in case of purchasers and creditors, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding:" Jaques v. Weeks, 7 Watts, 261. It is always the duty of a purchaser of real estate to investigate the title of his vendor. He cannot be said to exercise due diligence in this regard if he accepts the statement of his vendor as to binding effect of an outstanding agreement of sale with another, and makes no attempt to ascertain for himself what the agreement contains. Had the defendant or its agent inquired through the agreement itself, of the existence of which it admittedly had notice, or of the party holding it, the fact that there was an outstanding equitable title in the plaintiff must have appeared. Failing to do this the defendant was chargeable, as matter of law, with notice of the facts which the inquiry would have disclosed.

III. This was not an equitable ejectment to enforce specific performance of a contract; but an ejectment brought solely for the purpose of recovering possession of the land in dispute. The defendant was not entitled to receive purchase money from the plaintiff under any circumstances; therefore no tender was necessary, nor was it necessary that plaintiff should have

the money due to Herrold present in court. For reimbursement for what it paid for a defective title, the defendant must look to its grantor. True, the plaintiff was suing on an equitable title; but this was quite sufficient to enable it to maintain the action: Presbyterian Congregation v. Johnston, 1 W. & S. 9.

In what we have said we have expressed ourselves with respect to each one of the several assignments of error. We find them to be without merit, and they are overruled.

Judgment affirmed.