## Frederick's Estate

*Robert C. Haberstroh* and *Paul E. Beaver*, for petitioner.

*Charles M. Kurtz* and *Robert J. Puderbaugh*, for respondents.

PATTERSON, P. J., December 14, 1943.—This is a petition by the Altoona Trust Company, guardian of David B. Frederick, a feeble-minded person, for authority to amend the description in a certain petition and order made by the Court of Common Pleas of Blair County on October 20, 1941, authorizing the guardian to convey in accordance with an article of agreement of sale made by David B. Frederick on March 31, 1941, which was prior to the date of his adjudication as a feeble-minded person. Petitioner seeks to correct the description set forth in the original petition and order, and prays that the said correction be made nunc pro tunc as of October 20, 1941. Elizabeth Hardy, a daughter of David B. Frederick, filed an answer to this petition to amend, objecting to the proceeding on the ground that notice of the presentation of the petition of October 20, 1941, was not served upon her or any of the next of kin of David B. Frederick, as provided by law.

### Findings of fact

From a study of the testimony the court finds the following facts:

1. By deed of John G. Myers, widower, et al., dated April 19, 1924, and entered of record in the office of the Recorder of Deeds in and for Blair County, in deed book vol. 322, at page 25, David B. Frederick became seized of two tracts of land, the said tracts being situate in Tyrone Township, Blair County, Pa., the first tract containing approximately 222 acres 70 perches and allowance and the second containing 150 acres, more or less, and being known as the "mountain land". (This second tract is not involved in this proceeding.)

2. Between April 19, 1924, and March 31, 1941, said David B. Frederick disposed of 10 or 15 parcels of land or cottage sites, all of which were taken from the 222-acre tract of land. Some of the cottage sites were taken from the farmland on the left-hand side of the "back road". Others were situate on the "pasture land" on the right-hand side of the said "back road". None of these cottage sites was referred to in 'the article of agreement hereinafter mentioned.

3. On March 31, 1941, David B. Frederick executed, acknowledged, and delivered unto Mahlon A. Otto and Daisy V. Otto, his wife, an agreement in writing, whereby the said David B. Frederick bound himself to sell and convey unto the said Mahlon A. Otto and Daisy V. Otto, his wife, the aforesaid 222-acre tract of land for the price or sum of $5,000, $20 hand-money having been paid several days previous to said date, and the balance to be paid within 90 days, or at such time as final approval of the Federal Land Bank loan applied for by purchasers was granted, with possession of the premises to be delivered to the said purchasers as of March 31, 1941.

4. On May 26, 1941 (March term, 1941, no. 148), the said David B. Frederick was duly adjudicated by this court to be a weakminded person and the Altoona Trust Company was duly appointed and qualified as his guardian.

5. On October 20, 1941, the Altoona Trust Company, as guardian of David B. Frederick, presented its petition to this court asking for authority to convey a tract containing 130.95 acres net, that being all the land lying to the left of the aforementioned "back road" running from Altoona to Arch Spring, except certain cottage sites or other parcels disposed of by David B. Frederick prior to the date of the agreement. The said petition purported to apply for authority to carry out the article of agreement of March 31, 1941, but the land described did not conform to the land described

in the agreement to convey 222 acres 70 perches and allowance. There was nothing in the agreement concerning a tract of 130.95 acres.

6. Subsequent to the said order of court of October 20, 1941, the Altoona Trust Company, guardian of David B. Frederick, executed a deed to Mahlon A. Otto and Daisy V. Otto, his wife, conveying the land described in the petition, containing 130.95 acres, and, in addition thereto, another tract containing 62.36 acres. This second description was not included in the original petition, but it is now shown to be that part of the original 222-acre tract which lies to the right-hand side of the Altoona-Arch Spring Road, otherwise known as the "back road".

7. The description in the original petition does not conform, either in boundaries or acreage, to the description in the article of agreement of March 31, 1941.

8. The description in the deed executed in pursuance of the order of October 20, 1941, which said deed is recorded in deed book vol. 465, at page 502, consists of two purparts. Purpart no. 1 therein is the same description, by metes, bounds, and acreage, as that contained in the petition to sell. The description in the deed also contains a second purpart containing 62.36 acres net, having thereon erected a small cottage. Neither description in the deed is mentioned and described as such in the article of agreement, and the description containing 62.36 acres net, having thereon erected a small cottage, is not mentioned or referred to in either the agreement of March 31, 1941, or the petition or order of October 20, 1941.

9. The article of agreement signed by David B. Frederick did not mention or refer to any exceptions whatever, except one mentioned in the deed by which he acquired the land from John G. Myers et al., on April 19, 1924.

10. It is admitted by all the parties in this suit that 10 or 15 acres of land or cottage sites situate along what is called the "back road" leading from Altoona to Arch Springs, disposed of by David B. Frederick, were not to be included in the sale, although not specifically mentioned.

11. Elizabeth Hardy and Harry Hardy, her husband, at the time of the agreement of sale, and for several years prior thereto, were in possession of and occupied a certain cottage situate on the land lying between the tract previously sold to A. Lamont and land of Sickes, and originally a part of the 222-acre tract described in the article of agreement, and by a certain stipulation of the parties in interest made on December 13, 1943, the said land occupied by the Hardys is described as follows:

"ALL THAT CERTAIN piece or parcel of land situate, lying and being in the Township of Tyrone, County of Blair and State of Pennsylvania, bounded and described as follows: . . . Having thereon erected a small story and a half cottage, hog pen, chicken house and other necessary out-buildings, and now occupied by Elizabeth Hardy and husband."

The said stipulation is made merely for the purpose of describing the land claimed by the Hardys, and is made without prejudice to the rights of any of the parties. (See record of stipulation made December 13, 1943, and filed with the record in this case.)

12. Neither Elizabeth Hardy nor her husband was present at the Frederick home at the time the agreement was executed. Neither she nor her husband, along with other heirs, had notice of the proceedings incident to the petition and order of October 20, 1941, and they were not present in court at the time. She was not present at any time when the article of agreement was read and did not know that it purported to contain that part of the property occupied and claimed by her for several years prior to the date of the agreement.

13. Mahlon A. Otto had knowledge of the possession of the Hardys on this part of the land prior to and at the time he made the agreement. After he had concluded the agreement and had learned that they had "no deed or anything to show" their title he notified the Hardys to vacate and they refused, claiming ownership.

14. According to the true intent and meaning of the agreement and the equities of the case, David B. Frederick did not intend to sell to the Ottos that part of the land occupied by the Hardy cottage, between land of A. Lamont and the Sickes land, and described more particularly in finding of fact no. 11.

*Conclusions of law*

1. The original proceedings of October 20, 1941, were voidable in that notice thereof was not served upon the next of kin of David B. Frederick, who had been adjudicated a weakminded person.

2. The rights of Elizabeth Hardy and her husband had become fixed prior to the time of signing the said contract of sale by David B. Frederick, and Elizabeth Hardy and Harry Hardy, her husband, were in open and notorious possession of a portion of the said property now sought to be added to the said petition and ordered sold.

3. Elizabeth Hardy and Harry Hardy, her husband, being next of kin of David B. Frederick, and in actual possession of part of the land sought to be included in the order to amend the original petition, and not having had any notice of the proceeding as required by law, were not bound by the said order of court of October 20, 1941.

4. The said deed purported to have been made in pursuance of the said order of October 20, 1941, was erroneous and prejudicial to Elizabeth Hardy and Harry Hardy, her husband, in that it purported to convey the land having thereon erected a cottage, of

which they were in open and notorious possession for a number of years prior to the agreement, with the full knowledge of the purchaser who had made no proper inquiry concerning their right to title prior to his consummation of the article of agreement.

5. Having had actual notice of the occupancy and possession of Elizabeth Hardy and her husband prior to and at the time of entering into the agreement to purchase the land, Mahlon A. Otto and Daisy V. Otto, his wife, were bound to make proper inquiry of the persons in possession before consummating the deal, and having failed to make such inquiry they were estopped from asserting title in this petition for specific performance of contract.

6. The court does not have the right to amend a record nunc pro tunc as of October 20, 1941, to the prejudice of the Hardys, who had no notice of the original proceeding, and by reason thereof did not have their day in court to object to the conveyance including the part of the land they claim.

7. It being admitted by all the parties that the description in the article of agreement did not correctly describe the land intended to be sold and both parties having offered parol testimony to show the quantity, boundaries, and location of the land intended to be sold by the agreement, therefore, it devolves upon the court to determine what the true intent and meaning of the agreement was from the testimony offered.

8. The deed purported to be executed by the Altoona Trust Company, guardian, subsequent to the order of October 20, 1941, is incorrect as to the description of the land therein mentioned, and is voidable for the reason that the proceeding was not had in accordance with the act of assembly and the law made and provided in such cases.

9. It appearing that notice has been served upon all the parties, as provided by the Act of June 13, 1836, P. L. 589, and the subsequent Acts of 1901 and 1907, re-

lating to procedure for the performance of contracts made by persons who are afterward adjudicated as feeble-minded, the present petition of the Altoona Trust Company, guardian of David B. Frederick, may be considered as an original petition.

## Discussion

Petitioners now ask the court to make an order directing specific performance of a contract conveying two purparts of land, neither of which is mentioned nor described in the article of agreement. Respondents object to the order for the reason that they claim and were in actual possession for a number of years prior to the date of the agreement of a certain parcel of land included in one of the purparts for which petitioners pray the order and for the further reason that it was not intended to be included in the sale agreement.

At the time of making the agreement with Mahlon A. Otto and Daisy V. Otto, his wife, David B. Frederick owned two tracts of land. One was described as containing 222 acres 70 perches and allowance. The other was an adjoining tract containing 150 acres, more or less, and known as "mountain land". It is agreed by all the parties that the 150-acre tract of mountain land is not involved in this proceeding. It appears from the testimony that the 222-acre tract is divided by a road known as the Altoona-Arch Spring Road or "back road". Over a period of years prior to the date of the agreement Mr. Frederick had disposed of a number of parcels of land or cottage sites from the 222-acre tract. Several of these cottage tracts were situate on the so-called "back road". The agreement made with the Ottos described the 222-acre tract by metes and bounds. No mention was made in the written agreement concerning the exception or reservation of any of the parcels of land disposed of by Mr. Frederick. At the time the agreement was made there was some discussion as to whether the sale was to in-

clude the land beyond the Altoona-Arch Spring Road, also known as the "back road". All of Mr. Frederick's children and the Ottos, who were present, knew that it was not the intention of Mr. Frederick to convey all of the 222-acre tract, it being admitted that there were 10 or 15 acres or cottage sites to be excepted from the said description. There was substantial agreement by the parties that the sale was intended to convey the farm proper, subject to certain exceptions as above stated. Some of the witnesses contend that the farm proper included all the land to the left of the road, which has since been ascertained to contain 130.95 acres, after deducting certain exceptions not reserved in the agreement, and that that was all that Mr. Frederick intended to sell. They distinguished that part of the land lying to the right of the "back road" as "pasture land", and some of them referred to it as "mountain land" or the "Jack Pine tract". John Frederick and Howard Frederick, who were called by petitioners, testified that at one time part of that tract beyond the "back road" had been farmed.

Mr. Otto knew at the time of the making of the agreement that a part of this particular tract of land situate on the right of the said "back road", in what is now described as the 62.36-acre tract, was occupied by Elizabeth Hardy and Harry Hardy, her husband, respondents in this proceeding. He made no inquiry of them concerning the ownership. John Frederick, a son of David B. Frederick, witness called by petitioner, testified that he was present when the agreement was signed, and that his father said that the written agreement was in accordance with his understanding, as follows: "He told them everything was all right, but that he had sold off the cottages, and Mr. Otto said he understood that." Mr. Otto testified that after the agreement was signed he went to see the Hardys and Mrs. Hardy told him they claimed the land under an

agreement she had with her father. She testified that her father had given the land to her in consideration of a sum of money ($225 with interest from 1914) which he had received for her benefit during her mi-' nority. She said that at the time his barn burned in 1936 he told her he could not pay her the money because he needed it to build a new barn, but he would give her the land between a parcel which he had sold to A. Lamont and land of Sickes, having thereon erected a cottage which she had occupied for several years, in payment of the indebtedness he owed her.

Mr. Otto testified that he was with Mr. Baum, the surveyor, when he surveyed the land before the deed was made, at which time he talked with Lamont, an adjoining owner, who showed him some of the corners of the land occupied by the Hardys, and he testified further that he knew the said parcel was indicated on the blueprint made by Mr. Baum as a result of the survey when he accepted the deed and paid the purchase money. He said he learned after the agreement was made that the Hardys did not have a deed or anything to show they owned it and he then took steps to assert his title to that part of the land by demanding that they pay rent, which they refused, on the ground that they owned the land and the cottage. Had Mr. Otto made inquiry prior to the time of entering into the agreement or paying the purchase money he would have ascertained the fact that there was an outstanding equitable title in the Hardys. Failing to do this the Ottos were chargeable, as a matter of law, with notice of the facts which the inquiry would have disclosed.

"It is always the duty of a purchaser of real estate to investigate the title of his vendor. He cannot be said to exercise due diligence in this regard if he accepts the statement of his vendor as to binding effect of an outstanding agreement of sale with another, and makes no attempt to ascertain for himself what the agreement contains": Ohio River Junction R. R. Co. v.

Pennsylvania Co., 222 Pa. 573, syllabus; People's Natural Gas Co. v. American Natural Gas Co., 233 Pa. 569.

The question presented by this proceeding is to determine the quantity and extent of the land intended to be sold by the agreement. It is admitted by all the parties that the agreement does not properly describe the land intended to be conveyed. It is not a question of varying the terms of a written agreement by oral testimony, but to ascertain what the agreement was, and to do this the court must rely upon the record and the testimony submitted. A study of all the evidence, the record, and the equities in this case convinces the court that when the agreement was made it was not intended to convey all the land described in the agreement as containing 222 acres 70 perches and allowances; there were a number of exceptions which were not mentioned, consisting of 10 or 15 acres of land which had been disposed of by Mr. Frederick prior to the date of the agreement, and none of which was mentioned in the written agreement. The court is of the opinion that the land lying to the right of the "back road", now described as containing 62.36 acres and referred to as "pasture land", "Jack Pine tract", etc., by some of the witnesses, was a part of the 222 acres 70 perches tract known as the farm proper; it was intended to be sold, subject to certain exceptions, including the Hardy site and cottage, referred to by Mr. Frederick when he stated that he had sold off the cottages. The Hardy cottage is situate on a part of the land now described as containing 62.36 acres and referred to as "pasture land", etc., it all being a part of the 222-acre tract.

It is a general rule that the jurisdiction to enforce specific performance is always exercised subject to general equitable considerations and will not be applied to cases where equities exist on the other side which

would render it unjust to grant the ruling: Bispham's Principles of Equity (10th ed.), sec. 376.

Considering all the equities of the case, specific performance of the contract can be made in substantial compliance with the true intent of the agreement by authorizing the execution of a deed describing all the land included in the 222-acre tract, now described in the petition of this proceeding as purparts 1 and 2, and excepting that part occupied by the Hardys and described in finding of fact no. 11.

Therefore, the Altoona Trust Company, guardian of David B. Frederick, is authorized and directed to execute a deed of conveyance to Mahlon A. Otto and Daisy V. Otto, his wife, in accordance with the description in the amended petition, excepting and reserving therefrom that part of the land and cottage occupied by the Hardys, upon payment to it of the consideration of purchase money mentioned in the article of agreement in accordance with the terms thereof.

### Decree

Now, December 14, 1943, the deed heretofore executed by the Altoona Trust Company, guardian of David B. Frederick, a feeble-minded person, to Mahlon A. Otto and Daisy Otto, his wife, recorded in deed book vol. 465, page 502, is declared to be void and of no effect. And the said Altoona Trust Company, guardian as aforesaid, is authorized and directed to execute a deed of conveyance conveying to Mahlon A. Otto and Daisy V. Otto, his wife, the following described land:

Purpart No. 1 . . . .
Purpart No. 2 . . . .

And the clerk of the court is hereby directed to certify a copy of this decree to the office of the recorder of deeds for the purpose of having it indexed and recorded according to law.