**[J-17-2023] [MO: Wecht, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT**

| | | |
|---|---|---|
| DONALD R. BINDAS, | : | No. 27 WAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered May |
| | : | 18, 2021 at No. 652 CD 2018, |
| v. | : | affirming the Order of the Court of |
| | : | Common Pleas of Washington |
| | : | County entered February 26, 2018 |
| COMMONWEALTH OF PENNSYLVANIA, | : | at No. 2016-4760 |
| DEPARTMENT OF TRANSPORTATION, | : | |
| | : | ARGUED:  April 19, 2023 |
| Appellee | : | |

**DISSENTING OPINION**

**JUSTICE DONOHUE**                                   **DECIDED: AUGUST 22, 2023**

I would affirm the order of the Commonwealth Court based on the majority opinion

of that court.  *Bindas v. Dep't of Transp.*, 260 A.3d 991 (Pa. Commw. 2021).  While I

agree with the entirety of the intermediate court's majority opinion, I write to highlight the

portion of the opinion that analyzes Donald Bindas' lack of due diligence.

As the Commonwealth Court noted, the Superior Court has made the following

observations regarding Pennsylvania law:

> Our law provides that "[i]t is always the duty of a purchaser of
> real estate to investigate the title of his vendor[,]" and the
> purchaser must exercise due diligence in this regard. *Ohio
> River Junction R. Co. v. Pennsylvania Co.*, [72 A. 271, 273
> (Pa. 1909)]. The Supreme Court of Pennsylvania has
> explained the due diligence obligation as follows:
>
> > [Purchasers'] title could be affected only with what they
> > actually or constructively knew at the time of the purchase;
> > necessarily, as to the latter, by what they could have
> > learned by inquiry of the person in possession and of others

who, they had reason to believe, knew of facts which might affect the [title], and also by what appeared in the appropriate indexes in the office of the recorder of deeds, and in the various courts of record whose territorial jurisdiction embraced the land in dispute; but not of that which they could not have learned by inquiry of those only whom they had reason to believe knew of the facts.

*Lund v. Heinrich*, [189 A.2d 581, 585 (Pa. 1963)] (internal citations omitted). Accordingly, a purchaser fulfills his or her due diligence requirement when he or she examines the documents recorded in the county or counties in which the property is situated and when he or she asks the possessor about title, as well as any other people the purchaser has reason to believe would know about the status of the property's title.

*Bindas*, 260 A.3d at 1000-01 (quoting *Nolt v. TS Calkins & Assoc., LP*, 96 A.3d 1042, 1048 (Pa. Super. 2014)).

Donald Bindas' duty to employ due diligence to investigate the title to the property was triggered when he purchased it in 1977. However, his deposition testimony reveals a complete lack of diligence on his part. Importantly, Bindas testified that he did not investigate the title of the property until approximately 2016, around the time when the Department of Transportation began the I-70 project. N.T., 8/30/2017, at 15. This failure is particularly noteworthy given the trial court's observation that, "[b]ecause the property is a small parcel between a major highway and a local road, a search for the Highway Plan would be warranted by a prospective buyer." Trial Court Opinion, 5/24/2018, at 6. The record establishes that Bindas purchased the property without concern for the status of its title.

In terms of what the exercise of due diligence would have produced for Bindas, the Commonwealth Court accurately reported that "the chain of title of the Carter property that [Bindas] purchased specifically referenced the portion of the Property that the Department of Highways condemned in the Plan that was recorded in the County Recorder's Office." *Bindas*, 260 A.3d at 1000. Any question regarding the condemnation

could have been resolved prior to the purchase of the property with a modicum of diligence by Bindas. To the extent there was uncertainty after a search of records evidencing the fact of the condemnation in the chain of title, further diligence at the time of purchase, which was at a time closer to the condemnation, would have been required. This type of diligence is precisely what the Commonwealth Court correctly concluded that Bindas failed to employ. Bindas' failure to conduct a title search at the time of purchase negates any claim based on lack of notice of the condemnation. This highlights the fallacy of the Majority's holding, which emphasizes the importance of notice of a condemnation to a purchaser of property. If a purchaser of property does not conduct due diligence prior to the purchase, any claim based on a lack of notice is specious. In my view, the Majority's holding and mandate ignore Bindas' duty of due diligence and upends sound established case law.

Juxtaposed to Bindas' lack of due diligence, the Department of Highways did what the Legislature asked of the agency. I completely agree with the Commonwealth Court's statement that, "[n]ot only did the Department of Highways follow the proper procedures as set forth in Section 210 of the Highway Law[1] to condemn a right-of-way with respect to the [p]roperty in 1958, the Department of Highways also clearly compensated the owners of the [p]roperty at that time." *Bindas*, 260 A.3d at 999. For these reasons and on the basis of the majority opinion of the Commonwealth Court, I would affirm the intermediate court's order.

---

[1]  Act of June 1, 1945, P.L. 1242, as amended, 36 P.S. § 670-210.