David A. NOLT and Sandra A. Nolt, Appellants

v.

TS CALKINS & ASSOCIATES, LP, Anadarko E & P Company, LP, and Chesapeake Appalachia, LLC, Appellees.

Superior Court of Pennsylvania.

Argued April 2, 2014.

Filed July 7, 2014.

Dean E. Weisgold, Philadelphia, for appellants.

Andrea E. Hammel, West Conshohocken, for Anadarko, appellee.

Nicolle R.S. Bagnell, Pittsburgh, for Chesapeake, appellee.

BEFORE: DONOHUE, ALLEN and MUNDY, JJ.

OPINION BY DONOHUE, J.:

Appellants David A. and Sandra A. Nolt ("the Nolts") appeal from the June 20, 2013 order denying their motion for summary judgment and granting the motions for summary judgment filed by Appellees Anadarko E & P Co., LP ("Anadarko") and Chesapeake Appalachia, LLC ("Chesapeake") (collectively, "Appellees"). We affirm.

This case involves a 77–acre parcel of property in Bradford County ("the Property"). The facts underlying this appeal are best understood when set forth chronologically. In August 2002, Joseph Cullen transferred a large parcel of land containing the Property to his son and daughter-in-law, Patrick and Karen Cullen. Although the parcel of land they received is located wholly within Bradford County, Patrick and Karen Cullen had the deed evidencing this transfer recorded in neighboring Sullivan County.[1]

In January 2006, Joseph Cullen signed an oil and gas lease for a 98–acre parcel of land that encompasses the Property with T.S. Calkins ("Calkins"). In July of the same year, the Oil and Gas Memorandum memorializing this agreement was recorded in Bradford County. Four months later, in November 2006, Calkins assigned its interest in the lease to Anadarko.

In January 2007, the deed transferring the land from Joseph Cullen to Patrick

---

1. We note for completeness that although this deed was signed in August 2003, it was not recorded in Sullivan County until January 2004.

and Karen Cullen was recorded in Bradford County. Around the same time, Joseph Cullen agreed to sell a portion of land (which he had previously transferred to Patrick and Karen Cullen) to the Nolts. The Nolts did not discover the fact that Patrick and Karen Cullen owned the land, rather than Joseph Cullen, until the parties met to close on the transaction. The record reflects that in July 2007, Joseph, Patrick and Karen Cullen transferred a parcel of land to the Nolts. In May, 2008, Patrick and Karen Cullen transferred a second parcel of property to the Nolts. These parcels together constitute the Property. In October 2008, Anadarko assigned 50% of its interest in the oil and gas lease on the Property to Chesapeake.

In 2009, the Nolts filed the underlying quiet title action, alleging that the oil and gas lease was invalid and created a cloud on the title of the Property. In 2012, the Nolts, Anadarko, and Chesapeake all filed motions for summary judgment. In these motions it became clear that a central issue in this case was the nature of the interest created when Cullen signed the oil and gas lease with Calkins and the applicable statute of frauds. The Nolts asserted that the oil and gas lease was a lease subject to the Landlord and Tenant Act of 1951, 68 P.S. § 250.202 ("Landlord and Tenant Act"), and that the statute of frauds thereunder requires a lease to be signed by both the lessor and the lessee to be valid. Because Calkins did not execute the lease, the Nolts argued, it was rendered a year-to-year lease, and the term had expired. They also argued that Calkins did not acquire a valid leasehold because at the time of the lease's creation, Calkins failed to exercise due diligence in determining whether Cullen possessed ti-

tle to the parcel, despite having constructive notice of his prior transfer to Patrick and Karen Cullen.

Anadarko and Chesapeake argued in their motions for summary judgment that the oil and gas lease is not a lease governed by the Landlord and Tenant Act, but rather a transfer of realty subject to the statute of frauds codified at 33 P.S. § 1 ("general statute of frauds"). They further contended that Calkins was a bona fide purchaser without notice of the prior conveyance from Joseph Cullen to Patrick and Karen Cullen, such that his right to the property cannot be defeated on the basis of that previous conveyance where the deed was filed in Sullivan County and not Bradford County, the situs of the property.

The trial court denied the Nolts' motion for summary judgment and granted summary judgment in favor of Appellees. On July 5, 2013, the Nolts filed the instant appeal, wherein they raised the following issues: [2]

1. Is an oil and gas lease valid where not signed by a lessee in violation of the statute of frauds?

2. Did defendants exercise due diligence in entering into an oil and gas lease where title to the property was not in the lessor's name, and certain facts should have caused the lessee to conduct an additional investigation?

3. Is an oil and gas lease still in effect where production of gas did not commence during the primary term of the lease?

Appellants' Brief at 4.

Considering these issues, we adhere to the well-established scope and standard of

---

**2.** The trial court did not order the Nolts to file a Pa.R.A.P. 1925(b) Statement of Errors Complained of on Appeal.

reviewing for an order granting summary judgment:

Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 60–61 (Pa.Super.2006) (citation omitted).

 * * *

When reviewing a grant of summary judgment, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. *Id.* We will disturb the trial court's order only upon an error of law or an abuse of discretion. 'Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration.' *Id.* (citation omitted). Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law, exercises its discretion in a manner lacking reason, or does not follow legal procedure. *Id.* (citation omitted).

*McCausland v. Wagner*, 78 A.3d 1093, 1099–1100 (Pa.Super.2013).

██ The Nolts first argue that the statute of frauds contained in the Landlord and Tenant Act "bars the enforcement of the oil and gas lease beyond a year to year term, which has since expired." Appellants' Brief at 17.

██ In making this argument, the Nolts turn a blind eye to case law rejecting the notion that oil and gas leases are governed by landlord/tenant legal principles. *See Derrickheim Co. v. Brown*, 305 Pa.Super. 173, 451 A.2d 477, 479 (1982) ("[O]il and gas leases are not controlled by normal landlord and tenant law."). Although the interpretation of oil and gas leases has proved to be "troublesome" for the courts of this Commonwealth, *Szymanowski v. Brace*, 987 A.2d 717, 719–20 (Pa.Super.2009), the law has developed to provide that an oil and gas lease, despite the use of the term "lease," actually involves the conveyance of property rights:

[A]n oil and gas lease reflects a conveyance of property rights within a highly technical and well-developed industry, and thus certain aspects of property law as refined by and utilized within the industry are necessarily brought into play. [*Daset Mining Corp. v. Industrial Fuels Corp.*, 326 Pa.Super. 14, 473 A.2d 584, 592 (Pa.Super.1984) ]; [*Hutchison v. Sunbeam Coal* [513 Pa. 192], 519 A.2d 385, 387 n. 1 (Pa.1986) ] ('using the term 'lease' with regard to the conveyance of mineral rights 'is in some respects a misnomer' [because] what is really involved is a transfer of an interest in real estate, the mineral in place.').

*McCausland*, 78 A.3d at 1100 (Pa.Super.2013) (citing *Jacobs v. CNG Transmission Corp.*, 332 F.Supp.2d 759, 784 (W.D.Pa.2004)). The law of this Commonwealth provides that

the title conveyed in an oil and gas lease is inchoate, and is initially for the purpose of exploration and development. If development during the agreed upon primary term is unsuccessful, no estate vests in the lessee. If, however, oil or gas is produced, a fee simple determinable is created in the lessee, and the lessee's right to extract the oil or gas becomes vested. A fee simple determinable is an estate in fee that automatically reverts to the grantor upon the occurrence of a specific event. The interest held by the grantor after such a convey-

ance is termed a possibility of reverter. Such a fee is a fee simple, because it may last forever in the grantee and his heirs and assigns, the duration depending upon the concurrence of collateral circumstances which qualify and debase the purity of the grant.

*T.W. Phillips Gas & Oil Co. v. Jedlicka,* 615 Pa. 199, 42 A.3d 261, 267 (2012) (citations omitted).[3]

■ Joseph Cullen executed the oil and gas lease at issue to Calkins. This transaction did not create a lease, but rather a transfer of a property right in the oil and gas. *Id.* Accordingly, this conveyance is subject to the general statute of frauds, not the statute of frauds contained in the Landlord and Tenant Act, and so the Nolts' argument fails. Moreover, we note that the general statute of frauds requires only the signature of the grantor, Joseph Cullen. *Trowbridge v. McCaigue,* 992 A.2d 199, 201 (Pa.Super.2010); *Long v. Brown,* 399 Pa.Super. 312, 582 A.2d 359, 361 (1990) ("The Statute of Frauds instructs that a purported transfer of an ownership interest in real property is not enforceable unless evidenced in writing and signed by the parties granting the interest.") (citing 33 P.S. § 1). Joseph Cullen signed the instrument granting the oil and gas lease in Calkins' favor; therefore there is no violation of the applicable statute of frauds.

■ The Nolts next argue that Calkins did not exercise due diligence when obtaining the oil and gas lease, and that its failure to do so means that it did not acquire valid title from the lease.[4] More specifically, the Nolts argue that due diligence required Calkins to (1) search the Sullivan County property records because the property lease was near the Sullivan County boarder, and (2) inquire more specifically of Joseph Cullen as to whether he did, in fact, own the land he told them he owned. Appellants' Brief at 24–28. The trial court rejected these claims. Trial Court Opinion, 6/18/13, at 7. We find no error in its determination.

3. Although the Nolts do not discuss the inchoate nature of the estate created by an oil and gas lease in support of their argument, we note the following. It is undisputed that no production has occurred on the Property, *see, e.g.,* Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, 1/10/13, at 4, and so the estate has remained inchoate. An inchoate estate "has no attribute of property, is without appreciable value, and the interest to which it relates is nonexistent and may never exist." *See In re Good's Estate,* 407 Pa. 642, 182 A.2d 721, 724 (1962).

However, the fact that the right here did not ripen into a fee simple determinable and that the property right did not vest does not diminish the fact that our law has evolved to unequivocally establish that rights to oil and gas are to be treated as transfers of estates in property and not leaseholds. As such, we adhere to the long tradition of treating oil and gas leases as the sale of an estate in land subject to the general statute of frauds codified at 33 P.S. § 1. This conclusion is bolstered by this Court's determination that the assignment of an oil and gas lease must be in writing. *See Szymanowski,* 987 A.2d at 725 (quoting *Stockdale v. Sellers,* 102 Pa.Super. 447, 157 A. 30 (1931) ("[T]he interest in gas well number one ... is real estate and title could only pass under the Statute of Frauds by an assignment or deed in writing.")).

4. In conjunction with this claim, the Nolts set forth a fairly lengthy argument that the oil and gas lease is invalid because Joseph Cullen did not have title to the property at the time he entered into the lease with Calkins. Appellants' Brief at 22–24. This argument is distinct from the issue they have raised, which challenges Calkins' due diligence efforts. As the Nolts did not raise this issue in their statement of questions involved, it is waived and we will not address it. *Southcentral Employment Corp. v. Birmingham Fire Ins. Co. of Pennsylvania,* 926 A.2d 977, 983 n. 5 (Pa.Super.2007) (holding that issues not explicitly raised in appellant's statement of the questions involved is waived); Pa.R.A.P. 2116(a).

 Our law provides that "[i]t is always the duty of a purchaser of real estate to investigate the title of his vendor[,]" and the purchaser must exercise due diligence in this regard. *Ohio River Junction R. Co. v. Pennsylvania Co.*, 222 Pa. 573, 72 A. 271, 273 (1909). The Supreme Court of Pennsylvania has explained the due diligence obligation as follows:

> [Purchasers'] title could be affected only with what they actually or constructively knew at the time of the purchase; necessarily, as to the latter, by what they could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect the tite [*sic*], and also by what appeared in the appropriate indexes in the office of the recorder of deeds, and in the various courts of record whose territorial jurisdiction embraced the land in dispute; but not of that which they could not have learned by inquiry of those only whom they had reason to believe knew of the facts.

*Lund v. Heinrich*, 410 Pa. 341, 189 A.2d 581, 585 (1963) (internal citations omitted). Accordingly, a purchaser fulfills his or her due diligence requirement when he or she examines the documents recorded in the county or counties in which the property is situated[5] and when he or she asks the possessor about title, as well as any other people the purchaser has reason to believe

would know about the status of the property's title.

It is undisputed that at the time Calkins entered into the oil and gas lease with Joseph Cullen, the deed evidencing the transfer of the property to Patrick and Karen Cullen had not been recorded in Bradford County. The landman for Calkins, Patricia Hawkins ("Hawkins"), testified that she checked the Bradford County Courthouse to verify that Joseph Cullen had clear title to the land Calkins wanted to put under lease. N.T., 4/23/12, at 28, 38–39. Hawkins further testified that she went to the property, knocked on the door of the house there, Joseph Cullen answered the door, and that he told her he owned the property in question. *Id.* at 11, 15. Joseph Cullen admitted that when he entered into the lease with Calkins, he believed that he owned all of the land that Calkins sought to lease. N.T., 7/24/12, at 25.

The uncontroverted facts establish that Calkins sufficiently executed the due diligence requirement attendant with the conveyance of an interest in land. Hawkins searched the property records in Bradford County, spoke with the owner of record and the possessor, Joseph Cullen, who told her that he owned the property she sought to lease on Calkins' behalf. This investigation revealed no indication of a possible defect in Joseph Cullen's title. We conclude that as a matter of law, Calkins met its due diligence obligation.[6]

---

**5.** We note that conveyances of interests in property must be recorded in the county in which the property is situated. 21 P.S. § 444 ("All deeds and conveyances ... shall be recorded in the office for the recording of deeds where such lands lie[.]"). "The legal effect of the recording of such agreements shall be to give constructive notice to subsequent purchasers, mortgagees, and/or judgment creditors of the parties to said agreements[.]" 21 P.S. § 357. A subsequent purchaser is entitled to rely on the information contained in

these records. *Lesnick v. Chartiers Natural Gas Co.*, 889 A.2d 1282, 1285 (Pa.Super.2005).

**6.** The Nolts cite *Lund* for "the proposition that a lessee has notice of recorded documents in *all* counties in which the leased land sits." Appellants' Brief at 28 (emphasis in the original). The problem with this statement is that in this case, the land at issue (the land that Joseph Cullen transferred to Patrick and Karen Cullen) was located entirely within

■ The third issue the Nolts raise on appeal is whether the oil and gas lease at issue expired on January 20, 2011 due to the inactivity of drilling operations during the primary term of the lease. The Nolts did not include this issue in their motion for summary judgment.[7] It is axiomatic that a claim not raised in the trial court may not be raised for the first time on appeal. Pa.R.A.P. 302(a). As the Nolts did not properly raise this issue in the trial court, they cannot raise it now on appeal. Accordingly, we find this issue waived.

Order affirmed.

MUNDY, J. concurs in the result.

---

Bradford County. *Lund* does not impose a requirement to search property records of all neighboring counties, as the Nolts seem to suggest; rather, it holds that where the parcel of land sits in more than one county, the deed evidencing its transfer must be recorded in all of the counties in which the property is situated. We are similarly unpersuaded by the Nolts' claim that due diligence required Calkins to "inquire more carefully from [*sic*] Joseph A. Cullen as to the specific identity of the land that he sold to his son" because there was a deed of record of Joseph Cullen transferring an entirely separate parcel of land to Patrick Cullen. *Id.* at 26. As stated above, Joseph Cullen believed that he owned the property Calkins sought to lease, and he so advised Calkins. The deed of record, upon which Calkins was entitled to rely, *Lesnick*, 889 A.2d at 1285, revealed that Joseph Cullen was the owner of the land. We cannot agree that the fact Joseph transferred *other* property to his son raises a question as to the title of the property in question such that Calkins should have required further proof of ownership from Joseph Cullen or further sought to verify Joseph's claim to the property. Simply, all of the information Calkins unearthed indicated that Joseph Cullen was the owner of the property; the relevant record reveals not so much as a hint that the land was owned by anyone else.

7. In their reply brief to this Court, the Nolts aver that they raised this issue in their motion for summary judgment and point to three discrete paragraphs in that motion in support of this claim. Appellants' Reply Brief at 1–2. The paragraphs to which the Nolts draw our attention are in the "Background Facts" and "Conclusion" sections of their motion for summary judgment, and notably not in the "Argument" section. Indeed, there is absolutely no argument addressed to this issue in their motion for summary judgment. Rather, it appears that the Nolts raised and developed this issue for the first time in a letter sent to the trial court judge on April 2, 2013, after briefing and oral argument on the cross-motions for summary judgment had concluded. We note that the trial court did not address this claim in its opinion of June 20, 2013.