NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1371
_____

DARLENE R. MCWREATH; ROBERT MCBRIDE;
KAREN LUNDIN; DEBORAH L. MCWREATH,
Appellants

v.

RANGE RESOURCES - APPALACHIA, LLC
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ No. 2-13-cv-00560)
District Judge: Hon. Nora B. Fisher
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 5, 2015
_____

Before: FUENTES, JORDAN, and VANASKIE, *Circuit Judges*

(Filed: March 29, 2016)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge.*

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellants Darlene McWreath, Deborah McWreath, Robert McBride, and Karen Lundin ("the McWreaths") appeal the District Court's grant of summary judgment to Appellee Range Resources-Appalachia, LLC ("Range") on the McWreaths' claim for an accounting, as well as the District Court's denial of leave to amend their Complaint. The McWreaths assert that the oil and gas lease they entered into with Range does not apply to the oil and gas produced from two wells drilled by Range that tapped into oil and gas reserves partially owned by the McWreaths. The McWreaths claimed they were cotenants in the oil and gas estate and sought an accounting of the oil and gas production from these wells. For the reasons discussed below, we hold that the lease does indeed apply to the oil and gas produced from the wells, and therefore, the McWreaths' claims to cotenant status and right to an accounting fail. We also conclude that the District Court did not abuse its discretion in denying leave to amend because the McWreaths did not submit a draft amended complaint, the request was untimely, and the amendment would have been futile. Accordingly, we will affirm the District Court's judgment.

## I.

The McWreaths own an undivided partial interest in the oil and gas underlying approximately 1,700 acres of real property in Washington County, Pennsylvania, which they inherited as heirs to the Estate of David R. McWreath.[1] The McWreaths do not have any ownership interests in the surface rights of the property. On September 20, 2007, the Estate entered into a lease agreement with Fortuna Energy, Inc., whereby the Estate

---

[1] The McWreaths own a 33% interest in the oil and gas underlying approximately 1,332 acres and a 66% interest in the remaining 368 acres.

granted Fortuna the exclusive rights to explore, develop, and produce the Estate's interests in the oil and gas. The terms of the lease stated that Fortuna would pay the Estate an annual rental fee of $5.00 per mineral acre until oil and gas was produced, at which time the Estate would receive royalty payments equal to $1/8^{th}$ of the market value of the oil and gas produced and sold, proportionate to their partial interest.

Fortuna subsequently assigned the lease to Range, which then entered into leases with the remaining two owners of partial interests in the oil and gas, thereby leasing 100% of the oil and gas interests underlying the property. Range also entered into a surface consent agreement with the surface owner of the property that gave Range the right to enter onto the surface of the property and drill wells for its oil and gas exploitation. Thereafter, Range drilled the two Marcellus Shale wells on the property at issue here.

On March 6, 2013, the McWreaths filed this lawsuit in the Court of Common Pleas of Washington County, Pennsylvania, and asserted claims for: (1) trespass, (2) conversion, and (3) an accounting of the oil and gas production from the wells. Range removed the case to the United States District Court for the Western District of Pennsylvania based on the diversity of the citizenship of the parties. The McWreaths did not allege that Range breached the terms of its lease, but rather asserted that the lease was not applicable to oil and gas produced from these two wells. In their view, the lease only gave Range the right to exploit their oil and gas interests when the drilling operations were set up on an adjacent property and not on the surface directly above the McWreaths' oil and gas interests. Because the McWreaths argued that these wells were not covered

3

by the lease, they concluded that they were a cotenant in the oil and gas estate and were entitled to a royalty equal to the gross revenue of any future sales of oil and gas produced from these wells, proportionate to their partial interest.[2]

The parties filed cross motions for summary judgment. The McWreaths conceded that summary judgment should be entered against them on their trespass and conversion claims, leaving only their accounting claim. The McWreaths, however, requested leave to amend their Complaint to add a claim that sought to invalidate the lease with Range. The District Court interpreted the lease and concluded that the lease was applicable to oil and gas produced from the two wells. Because the lease covered the oil and gas produced from these wells, the District Court held that the McWreaths did not have cotenant status and granted summary judgment to Range on the McWreaths' accounting claim. Additionally, the District Court denied the McWreaths leave to amend their Complaint. The McWreaths timely filed this appeal.

## II.

The District Court had subject matter jurisdiction under 28 U.S.C. § 1332(a). We have appellate jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's order granting summary judgment is plenary. *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 134 (3d Cir. 2013). We view the evidence "in the light most favorable to the nonmoving party." *Id.* at 134–35 (quoting *Kurns v. A.W. Chesterton*

---

[2] It is uncontested that apart from the initial flow-back that was produced at the time Range completed the wells—which Range compensated the McWreaths for under the terms of the lease—neither well is currently producing any oil or gas.

4

*Inc.*, 620 F.3d 392, 395 (3d Cir. 2010)). Summary judgment is appropriate where the movant establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the District Court's denial of leave to amend for abuse of discretion. *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014).

III.

A.

In Pennsylvania,[3] an oil and gas lease "is in the nature of a contract and is controlled by principles of contract law." *T.W. Phillips Gas & Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012). Under Pennsylvania law, "as a general matter, interpretation of a written agreement is a task to be performed by the court rather than a jury." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009) (citing *Gonzalez v. U.S. Steel Corp.*, 398 A.2d 1378, 1385 (Pa. 1979)); *see also Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). In construing a contract, "[t]he accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties," will determine the construction of the agreement. *T.W. Phillips Gas & Oil Co.*, 42 A.3d at 267 (quoting *J.K. Willison v. Consol. Coal Co.*, 637 A.2d 979, 982 (Pa. 1994)). Moreover, the "writing must be interpreted as a whole, giving effect to all its provisions." *Atl. Richfield Co. v. Razumic*, 390 A.2d 736, 739 (Pa. 1978).

---

[3] Because this case arises under diversity jurisdiction, we will apply the substantive law of the forum state, Pennsylvania. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Moreover, the parties agree that Pennsylvania law applies to this dispute.

5

A key provision in an oil and gas lease is the granting clause, which specifies what rights the lessor is conveying to the lessee. *See T.W. Phillips Gas & Oil Co.*, 42 A.3d at 267. Here, the granting clause states:

> [The McWreaths] hereby grant[] and lease[] *exclusively to [Range] all oil and gas and their constituents*, whether hydrocarbon or non-hydrocarbon, underlying the Leasehold, *together with such exclusive rights as may be necessary or convenient for [Range]*, at its election, to explore for, develop, produce, measure and market production from the Leasehold, using methods and techniques which are not restricted to current technology . . . .

(Supp. App. 1.) (emphasis added.) We agree with the District Court that the granting clause: (a) conveyed all of the McWreaths' oil and gas rights in the property; (b) granted Range the exclusive ability to explore for and produce oil and gas; and (c) authorized Range to use any methods or techniques to do so.

Despite the broad grant of rights conveyed in the granting clause, the McWreaths contend that there is "no lease" here. They assert that the lease agreement between the parties is a "Non-Surface Development Lease" that precludes Range from conducting drilling activities on the surface estate directly above their subsurface oil and gas interests.[4] Because the McWreaths seek complete avoidance of the lease, they must

---

[4] We reject at the outset, as the District Court did, any notion that the headings "**NON-SURFACE DEVELOPMENT**" and "**NON-DEVELOPMENT LEASE**" are relevant in ascertaining the parties' intent. Paragraph 20 of the lease expressly states: "The headings contained in this Lease are inserted for convenience of reference only and shall not effect [sic] the interpretation or construction of any provision herein." (Supp. App. 4.)

6

establish that the lease obligations are conditioned upon Range conducting its drilling activities on property other than the surface estate.

To meet their burden of showing that the lease is conditioned upon Range drilling for oil and gas on property other than the surface estate, the McWreaths rely on Paragraph 4 of the lease. This paragraph, in relevant part, provides:

> Lessor and Lessee acknowledge and agree that Lessee is not granted any right whatsoever to: (i) drill a well on any portion of the surface of the Leasehold; or (ii) install, construct or locate access roads or pipelines on any portion of the surface of the Leasehold. Accordingly, any lands that have been pooled, unitized or combined with all or a portion of the Leasehold in accordance with the terms of this Lease shall bear the burden of all surface development. . . .

(Supp. App. 2.) According to the McWreaths, the first sentence of this provision indicates that the McWreaths intended to preclude Range from drilling on the surface estate in order to reserve their own implied right to access and use the surface estate, as the owner of subsurface oil and gas interests. Additionally, the McWreaths contend that the phrase "any lands that have been pooled, unitized or combined with . . . the Leasehold . . . shall bear the burden of all surface development" in the second sentence evidences the parties' intent to restrict the lease's application to wells that were set up on adjacent land. (Supp. App. 2.)

Neither of these arguments is persuasive. In Pennsylvania, the owner of a subsurface estate has an implied right to access and use the surface in order to access what they own. *See Belden & Blake Corp. v. Com., Dep't of Conservation & Nat. Res.*, 969 A.2d 528, 532 (Pa. 2009). This right, however, arises by operation of law and is

7

attendant to the subsurface oil and gas. *Id*.; *see Humbertson v. Chevron U.S.A., Inc*., 75 A.3d 504, 511 (Pa. Super. Ct. 2013) ("[T]he law of this Commonwealth is that one who has the right to remove subsurface minerals, also has the right to enter onto the surface and to make reasonable use of a portion of the surface to retrieve his property."). Because the McWreaths conveyed all of their rights in the oil and gas to Range, they had no implied right to access and use the surface. Accordingly, the first sentence of Paragraph 4 cannot be reasonably interpreted as reserving any rights for the McWreaths. Rather, this can only be reasonably interpreted as an acknowledgment that the lease did not grant Range an express right to use the surface estate because the McWreaths did not own any express right in the surface estate. This sentence does not, however, restrict Range from obtaining the express right to use the surface estate from the owner *of the surface estate*, as Range did here.

Next, the phrase "any lands that have been pooled, unitized or combined with . . . the Leasehold . . . shall bear the burden of all surface development," (Supp. App. 2.), must be read in conjunction with the lease's provision on pooling and unitization. This provision grants Range the sole discretion "to pool or unitize all or any portion of the Leasehold with any other land or lands, whether contiguous or not contiguous." (Supp. App. 3.) Here, Range pooled contiguous property, consisting of the surface estate and the remaining partial interests in the subsurface estate, with the Leasehold. The land that Range pooled with the Leasehold—the surface estate—is bearing the burden of surface development, as required by Paragraph 4. The McWreaths' interpretation that this phrase limits surface development to adjacent lands would only be reasonable if the lease

8

allowed Range to pool the Leasehold *only with adjacent lands*. The express terms of the lease, however, allow Range to pool the Leasehold with "any other land," which in turn must bear the burden of surface development. (Supp. App. 3.)

"[A]n act or event designated in a contract will not be construed as a condition unless that clearly appears to be the intention of the parties." *Lesko v. Frankford Hosp.-Bucks Cty.*, 15 A.3d 337, 342 (Pa. 2011) (quoting *Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 139 (Pa. 1999)). In this case, the lease cannot be reasonably construed to condition its grant to Range on Range conducting its drilling activities on adjacent property. Accordingly, we agree with the District Court that Paragraph 4 does not contain language sufficient for the McWreaths to avoid the lease.

Furthermore, even assuming that Paragraph 4 could be interpreted as precluding Range from drilling on the surface estate, Pennsylvania law would not support the enforcement of such a restriction. Restrictions on property "are not favored by the law" in Pennsylvania because they "interfere with an owner's free use and enjoyment" of the land.[5] *Vernon Twp. Volunteer Fire Dep't, Inc. v. Connor*, 855 A.2d 873, 879 (Pa. 2004). Restrictions will typically only be enforced where "a party's actions are in clear defiance of the provisions imposed" and "the restriction is still of substantial value to the owners of the restricted tract." *Id*. at 879–80. As the District Court in this case explained:

---

[5] Although the oil and gas rights were conveyed by a lease, Pennsylvania courts have stated that "an oil and gas lease, despite the use of the term 'lease,' actually involves the conveyance of property rights." *Nolt v. TS Calkins & Assocs., LP*, 96 A.3d 1042, 1046 (Pa. Super. Ct. 2014). As a result, "certain aspects of property law . . . are necessarily brought into play." *Id*. (quoting *McCausland v. Wagner*, 78 A.3d 1093, 1100 (Pa. Super. Ct. 2013)); *see also T.W. Phillips Gas & Oil Co.*, 42 A.3d at 267.

9

> Plaintiffs are seeking to enforce an alleged restriction on Range's use of the surface of land which they (Plaintiffs) do not own on a theory that they retained an implied right to access the surface of the property, despite their grant of all of their partial oil and gas rights to the Lessee (Range) in ¶ 1 of the Lease. Further, all other involved property owners (surface and subsurface) have consented to Range using the property. Under Pennsylvania law, the Lease should be interpreted in favor of Range's free and unrestrained use of the surface of the land rather than precluding such use. It is also doubtful that Plaintiffs could enforce their claimed restraint due to the acquiescence of the surface owner and the cotenants in the subsurface oil and gas rights, all of whom have expressly agreed to Range's activities.

(App. 26.) (internal citations omitted).

We concur with the District Court's analysis. A restriction on using the surface estate is of no value to the McWreaths because they do not own any express rights to the surface estate and no longer have an implied right. Moreover, the owner of the surface estate expressly agreed to allow Range to use the surface estate for drilling activities. Accordingly, even if Paragraph 4 could be interpreted as precluding Range from using the surface estate for drilling activities, the lease should be interpreted in favor of Range's free and unrestrained use in these circumstances.

For all the foregoing reasons, we conclude that the lease between the McWreaths and Range contained an exclusive grant of all of the McWreaths' subsurface oil and gas interests and was not conditioned upon drilling activities taking place on property other than the surface estate. Under the terms of the lease, Range had the right to exploit the McWreaths' oil and gas interests by drilling wells on the surface of the property directly above the McWreaths' subsurface estate. As a result, the McWreaths' claim to cotenant

10

status necessarily fails, and they are not entitled to an accounting under Pennsylvania law. Therefore, we will affirm the District Court's grant of summary judgment in favor of Range on Count Three of the Complaint.

B.

Under the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, a district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000). Additionally, the failure to submit a draft amended complaint "is fatal to a request for leave to amend." *U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013) (quoting *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007)).

Here, the McWreaths sought to add a declaratory judgment action based on the allegation that a Code of Conduct was not presented when the lease was signed in 2007. The McWreaths, however, failed to submit a draft amended complaint in the almost five months between when they first raised the issue and when the District Court denied their request. This failure "is fatal to a request for leave to amend." *See Q2Administrators, LLC*, 728 F.3d at 243; *Fletcher-Harlee Corp.*, 482 F.3d at 252; *Lake*, 232 F.3d at 374. Furthermore, the McWreaths first raised the issue of amending their Complaint fourteen months after the expiration of the deadline established in the District Court's pretrial scheduling order. *See E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir.

11

2000) ("We conclude that the District Court acted well within its discretion when it denied Eastern's motion to amend the complaint six months after the amendment and joinder deadlines had expired . . . ."). Finally, the McWreaths' amendment would have been futile because the four-year limitations period for declaratory judgment actions arising out of contract had run by the time the McWreaths commenced this lawsuit in 2013. *See* 42 Pa. C.S. § 5525; *Algrant v. Evergreen Valley Nurseries Ltd. P'ship*, 126 F.3d 178, 181–82 (3d Cir. 1997); *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (holding that an amendment was futile because the claims would be barred by the statute of limitations). Accordingly, we conclude that the District Court did not abuse its discretion in denying leave to amend.

IV.

For the forgoing reasons, we will affirm the District Court's judgment of January 26, 2015.

*Darlene McWreath, et al. v. Range Resources-Appalachia,* LLC (No. 15-1371)
JORDAN, *Circuit Judge*, concurring specially in the judgment.

While I agree with my colleagues on the merits of this case, I would find the entire appeal waived because the McWreaths failed to properly argue for their right to an accounting in their opening brief. It is well-settled in our Circuit that "[a]n issue is waived unless a party raises it in its opening brief." *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994). In the proceedings below, the McWreaths' complaint averred that their lease with Range was invalid and identified three grounds for recovery: trespass, conversion, and accounting. The McWreaths voluntarily dismissed the trespass and conversion claims, leaving only their accounting claim. The District Court determined the lease to be valid and concluded that Pennsylvania law provided no basis for an accounting under any of the theories put forward by the McWreaths.

The McWreaths opening brief in this appeal challenged the validity of their lease with Range, but it did not address in any fashion why the invalidity of that lease would grant them a right to an accounting. Indeed, there is not a single reference to "accounting" anywhere in that brief. The McWreaths attempted to cure that waiver by filing a "supplemental brief" after Range had filed its answering brief and identified the opening brief's deficiency. We do not consider arguments made for the first time in a reply brief, *In re Surrick*, 338 F.3d 224, 237 (3d Cir. 2003), and similarly we ought not consider new arguments made in a supplemental filing that is the functional equivalent of

1

an extra reply brief.  (The McWreaths also filed a reply brief after they submitted their "supplemental brief.")  Therefore, because the McWreaths' opening brief failed to argue the only appealable issue in this case, I believe the appeal is waived *in toto* and we should not reach the merits.