J-A28036-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| SOUTHERSBY DEVELOPMENT CORPORATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| EQT PRODUCTION COMPANY | : | No. 421 WDA 2020 |

Appeal from the Order Entered March 10, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): No. GD-17-010019

BEFORE: OLSON, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: FILED DECEMBER 11, 2020

Southersby Development Corporation (Appellant) appeals from the order entered in the Allegheny County Court of Common Pleas dismissing with prejudice Appellant's amended complaint and granting summary judgment in favor of EQT Production Company (Appellee). In this oil and gas lease action,[1]

_____

[1] As the trial court notes:

> [Pennsylvania] law has developed to provide that an oil and gas lease, despite the use of the term "lease," actually involves the conveyance of property rights:
>
> > [A]n oil and gas lease reflects a conveyance of property rights within a highly technical and well-developed industry, and thus certain aspects of property law as refined by and utilized within the industry are necessarily brought into play.

the trial court found — based upon Appellee's presentation of public deeds and Appellant's own concessions on the record — Appellant owns oil and gas rights to only 27.0312 acres of property. On appeal, Appellant argues the record presents a genuine issue of material fact concerning whether it owns oil and gas rights to 114.4241 acres.[2] We affirm.

Appellant previously owned three large parcels of land — referred to in the trial court proceedings as Parcels 1, 2, and 3 — and has subdivided them. N.T. Motion H'rg, 3/10/20, at 7. The central factual dispute is the number of acres to which Appellant retained oil and gas rights.

The trial court aptly summarized the relevant facts and procedural history as follows. On October 6, 2015, the parties entered into an agreement for Appellee to lease oil and gas rights owned by Appellant. Paragraph 6 of this lease provides Appellee shall not pay for oil and gas rights that Appellant does not own:

> Representations and Warranties. [Appellant] warrants generally and shall defend title to the Leased Premises. If [Appellant] does not own all oil and gas on the Leased Premises: (i) [Appellant] shall refund any overpayments, and (ii) [Appellee] shall be released from making future payments in the proportion that the outstanding interest or title bears to the entire Leased Premises. . . .

_____

Nolt v. TS Calkins & Assocs., LP, 96 A.3d 1042, 1046 (Pa. Super. 2014) (citations omitted); Trial Ct. Op., 6/5/20, at 2 n.2.

[2] For ease of discussion, we refer to these two acreages as simply 27 acres and 114 acres.

Oil & Gas Lease (Paid-Up), 10/6/15, at 2-3, Exh. 1 to Appellant's Complaint, 7/14/17. Paragraph 3 of the lease provides a "due diligence period:"

> [Appellee] shall have 75 days after [Appellant's] execution of this Agreement (the "Diligence Period") to execute this Agreement . . . .

Id. at 1.

On December 22, 2015, the parties entered into a modified lease agreement,[3] which amends the total acreage of land to 114 acres. Trial Ct. Op. at 6-7. In conjunction with this lease modification, "the parties executed an "Order of Payment," which provides:

> [Appellee] hereby agrees to pay to [Appellant] the amount of $3,500.00 per acre of the Leased Premises actually owned by [Appellant.] Further, such payment shall be subject to any necessary adjustments as determined by [Appellee] from [Appellee's] due diligence under the Agreement. . . .

Order of Payment, 12/22/15 (some emphases added), Exh. 4 to Appellant's Complaint.

Appellee performed due diligence as to Appellant's title to the oil and gas rights. N.T. at 7-8; Trial Ct. Op. at 7. Appellee determined that of the total 114 acres, Appellant owned such rights to only 27 acres. Accordingly, on April 13, 2016, Appellee tendered payment of $94,609.20 to Appellant, representing 27 acres at $3,500 per acre. Trial Ct. Op. at 8. In the ensuing correspondence between the parties, Appellee provided "a summary of the

_____

[3] For ease of discussion, we refer to the original lease and the lease modification together as the "lease."

- 3 -

title failures" and explained that "[t]itle failed as to 87.3929 acres of the [114] because [Appellant] failed to except and reserve the oil and gas in numerous tracts that they outsold [sic] in their subdivisions." Id. at 9 (emphasis omitted). However, Appellee declined to provide a "title opinion" on the ground it was protected by the attorney/client privilege. See id.; N.T. at 20.

Following unsuccessful resolution of their disagreement as to the proper amount of payment, the parties either discussed the possibility of, or according to Appellant, reached an oral "settlement agreement," the terms of which appear to be disputed. See Appellant's Brief at 11. Appellant avers Appellee agreed it would enter "either: (1) a full-lease surrender and new lease for the acreage which [Appellee] was actually leasing, or (2) a partial surrender of the lease to remove the acreage for which [Appellee] did not pay," and the parties would enter a new lease. Id. at 11-12. According to Appellee, however, the parties' agreement was dependent on Appellant obtaining a surrender of another lease, involving Appellant's affiliate, ESE, for oil and gas rights.[4] Appellee averred Appellant failed to obtain this surrender. N.T. at 38-39. Appellee also represented that it did surrender the instant lease with Appellant, as requested by Appellant, and that when Appellee rejected Appellant's invitation to "start [a] new lease," Appellant filed the

_____

[4] No further explanation of this ESE lease was given at the summary judgment hearing. See N.T. at 38-39.

- 4 -

underlying suit to enforce the parties' original lease. Appellee's Motion for Summary Judgment, 1/24/20, at 3 (unpaginated).

Appellant filed a complaint on July 14, 2017, and an amended complaint on September 8th. Appellant averred it owned the subsurface or mineral rights of all 114 acres. Appellant's Amended Complaint, 9/8/17, at ¶ 6. The amended complaint raised claims: (1) for declaratory relief, in the form of a declaration of the parties' rights under the lease; (2) of breach of contract, breach of implied covenant of good faith and fair dealing, and promissory estoppel, related to Appellee's alleged non-payments under the written lease and modified lease; and (3) of fraud and deceit, related to the parties' alleged oral "settlement agreement." Id. at ¶¶ 53-88.

On January 24, 2020, Appellee filed a motion for summary judgment. The trial court conducted a hearing on March 10, 2020. We review in detail the parties' arguments. Appellee first claimed the lease did not specify it would pay for all 114 acres, but instead, Appellee would merely "pay $3,500 per acre of the leased premises actually owned by" Appellant. N.T. at 6. Appellee thus reasoned that "[p]aying [Appellant] on less than 114 acres only breaches the [lease] if [Appellant] actually owns 114 acres." Id. The trial court agreed and Appellant raised no objection. See id.

Appellee then argued Appellant could not meet its burden, in summary judgment proceedings, to show it in fact owned oil and gas rights to all 114 acres. N.T. at 6, 9. The deeds for the subdivided lots in Parcels 1 and 2 all

included the language, "'Under and subject to all prior grants and reservations of coal, oil and gas, mining rights,' so on and so forth, 'as the same appear in prior incidents of record.'" Id. at 8. The deeds for the subdivided lots in Parcel 3, however, included a different provision, which served to reserve oil and gas rights: "Accepting and reserving onto the grantors[, Appellant,] its heirs, successors and assigns." Id. at 9. Comparing these two provisions, it can be concluded the deeds for the lots in Parcels 1 and 2 did not reserve to Appellant oil and gas rights. Id. Appellant did not dispute this interpretation of the deed language. See id. Appellee then concluded its payment for 27 acres complied with the lease because Appellant only owned oil and gas rights for 27 acres. Id.

Critically, Appellant conceded, several times on the record, that it could not show it held rights for all 114 acres. Nevertheless, Appellant insisted Appellee failed to produce requested documentation.[5] We note these exchanges:

> THE COURT: . . . I don't think you're saying today you have the oil and gas rights to the other 87 acres.
>
> [Appellant's counsel]: I'm not representing that to the Court, that there is gas rights to the additional 87 acres. I'm not.

_____

[5] See N.T. at 19 (Appellant's counsel stating, "[W]hat was presented to [Appellant] was not adequate to demonstrate . . . what gas rights were owned in acreage by [Appellant.]"), 21-22 ("The proof relative to what [Appellee's counsel] said, . . . contrary to our request for the information."), 26 ("They didn't give us any of the documents.")

N.T. at 21.

> [THE COURT:] See, what's bothering me here is you don't own the oil and gas rights to these 87 acres. I don't think there's a dispute about that at this point.
>
> Or am I missing something?
>
> [Appellant's counsel:] I don't think it has ever been addressed by [Appellant] whether there is ownership of the gas rights to the remaining acreage. The basis for . . . the breach of contract [is] whether we had . . . the title documents or not, it was the reliance upon the due diligence from [Appellee] to provide us with that information at a minimum. . . .

N.T. at 29-30.

Appellant then stated its witness, Ann Murphy, would provide testimony, but Appellant ultimately agreed this witness could not show it owned the oil and gas rights it claimed to have:

> THE COURT: [This] is what I'm trying to understand. What material issue of fact have you put forward that precludes summary judgment?
>
> \* \* \*
>
> [Appellant's counsel:] Aside from what would be the testimony of Ann Murphy that would address each individual component of the title records. That's what would be able to refute the —
>
> THE COURT: But counsel, correct me if I'm wrong.
>
> If [Ann Murphy testifies] for two days in this hearing, the conclusion we're going to reach is . . . that you didn't have ownership to the 87.392 acres [of] oil and gas rights. That's the conclusion I'm going to reach.
>
> Am I right?

[Appellant's counsel:] Based upon our information, that's right, Your Honor. . . .

N.T. at 30-32 (emphases added).

Finally, we note this exchange:

THE COURT: . . . At the end of the day are you going to prove you had the ownership to 114 acres of oil and gas rights as you said in the original lease? That's the question I want you to answer.

[Appellant's counsel:] I do not believe that I would be able to put the evidence on and prove that.

THE COURT: Right. Because you didn't own the oil and gas rights to the 114 acres. You only owned them to the 27 that [Appellee] told you after they did their due diligence is what you owned. You don't dispute that at this point.

[Appellant's counsel:] That has not been disputed, no.

N.T. at 43 (emphases added).

With respect to Appellant's claim that Appellee did not provide requested documentation, the trial court pointed out Appellant had the deeds upon which Appellee based its title determinations. N.T. at 29. Indeed, Appellant was the grantor in these deeds. Id. (trial court stated, "You had your deeds to the property. That's what the title opinion is based on[.]").

At the conclusion of the hearing, the trial court granted Appellee's motion for summary judgment and dismissed Appellant's amended complaint with prejudice. N.T. at 49. Appellant filed a timely notice of appeal and complied with the court's Pa.R.A.P. 1925(b) order to file a concise statement of errors complained of on appeal.

Appellant presents six issues for our review:

[1.] Whether the trial court erred and abused its discretion by granting [Appellee's] motion for summary judgment and dismissing [Appellant's] amended complaint in its entirety in disregard of the evidentiary record proving and/or creating an issue of material fact relating to [Appellant's] ownership of the gas rights for the subject property?

[2.] Whether the trial court erred and abused its discretion by granting [Appellee's] motion for summary judgment and dismissing, without argument or due process, [Appellant's] claim for declaratory relief for the amounts [Appellee] owed to [Appellant] under the parties' agreements?

[3.] Whether the trial court erred and abused its discretion by granting [Appellee's] motion for summary judgment and dismissing [Appellant's] amended complaint in its entirety in disregard of the evidentiary record proving and/or creating an issue of material fact relating to [Appellant's] claims for breach of contract and breach of implied duty of good faith and fair dealing that [Appellee] owed to [Appellant] with respect to [Appellee's] breaches and bad faith in entering into, and failing to perform its obligations under, the lease agreement between the parties?

[4.] Whether the trial court erred and abused its discretion by granting [Appellee's] motion for summary judgment and dismissing [Appellant's] amended complaint in its entirety in disregard of the evidentiary record proving and/or creating an issue of material fact relating to [Appellant's] claims for breach of contract and breach of implied duty of good faith and fair dealing that [Appellee] owed to [Appellant] with respect [to Appellee's] breaches and bad faith in entering into, and failing to perform its obligations under, the settlement agreement between the parties requiring [Appellee] to remove the encumbrance on [Appellant's] property, to pay [Appellant], at a minimum, for property with undisputed gas rights and to enter into a new lease agreement with [Appellant]?

[5.] Whether the trial court erred and abused its discretion by granting [Appellee's] motion for summary judgment and dismissing [Appellant's] amended complaint in its entirety in disregard of the evidentiary record proving and/or creating an issue of material fact relating to [Appellant's] promissory estoppel

claims against [Appellee] with respect to [Appellee's] misrepresentations and inducement of [Appellant] that [Appellee] would pay [Appellant] for the encumbered property, and that [Appellee] would resolve the parties' dispute via settlement agreement by [Appellee] removing the encumbrance on [Appellant's] property, [Appellee] paying [Appellant], at a minimum, for the undisputed mineral rights, [Appellant] accepting a full surrender of the lease agreement, and [Appellee] entering into a new lease agreement with [Appellant]?

[6.] Whether the trial court erred and abused its discretion by granting [Appellee's] motion for summary judgment and dismissing [Appellant's] amended complaint in its entirety in disregard of the evidentiary record proving and/or creating an issue of material fact relating to [Appellant's] fraud and deceit claims against [Appellee] with respect to the [Appellee's] fraudulent misrepresentations and fraudulent inducement of [Appellant] to resolve the parties' dispute by [Appellee] removing the encumbrance of [Appellant's] property, paying [Appellant], at a minimum, for the undisputed mineral rights, [Appellant] accepting a full surrender of the lease agreement, and [Appellee] entering into a new lease agreement with [Appellant]?

Appellant's Brief at 2-3.

Preliminarily, we note the relevant standard of review:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to

- 10 -

the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

Seneca Res. Corp. v. S & T Bank, 122 A.3d 374, 378 (Pa. Super. 2015) (some citations omitted).

In its first issue, Appellant avers the trial court erred in granting Appellee's motion for summary judgment. Appellant contends the evidentiary record creates a genuine issue of material fact as to whether it owned oil and gas rights to all 114 acres. Specifically, Appellant reasons, the court improperly disregarded: (1) its response to an interrogatory from Appellee, seeking "all facts" and "all documents" that would support Appellant's claim it owned oil and gas rights to more than 27 acres;[6] (2) the deposition testimony of Appellant's corporate representative, Timothy Murphy; (3) the deposition testimony of Ann Murphy;[7] and (4) Appellant's counsel's arguments at the summary judgment hearing. Appellant's Brief at 16-27. Appellant provides pages-long quotations from each of these sources. No relief is due.

_____

[6] Specifically, the interrogatory sought an admission that Appellant owned only 27 acres of oil and gas rights. See Appellant's Brief at 16. The interrogatory provided that if Appellant did not admit this, it was to identify "all facts" and "all documents" to support its reason for the denial. See id. at 16-17.

[7] Appellant's brief refers to this witness as Anna Murphy. For ease of discussion, we use the name "Ann," consistent with the parties' discussion at the summary judgment hearing.

We note: "To show a breach of contract, a party must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." Seneca Res. Corp., 122 A.3d at 379 (citation omitted).

The trial court found Appellant failed to meet its burden of proof or "present sufficient evidence on an issue essential to its case — ownership of 114 acres of land with oil and gas rights[.]" Trial Ct. Op. at 15-16 (emphasis omitted). The court reasoned Appellant "was not precluded as the non-moving party to present sufficient evidence on [this] issue[.]" Id. at 15. Appellant "had the opportunity to conduct its own title search and to 'defend' its title pursuant to the terms of the Lease but did not present any record evidence to the contrary." Id. at 20 n.9. Instead, the court found, Appellant, "sub silentio, did not rebut nor defend title to more than [27] acres with oil and gas rights pursuant to its own contractual obligation." Id. at 15. The court then reasoned:

> [Appellant] could not lease oil and gas rights that it did not own. The Lease provided payment to [Appellant] for oil and gas rights that it did, in fact, own. Ownership of the oil and gas rights is an essential element of the Lease. It is undisputed that [Appellant] owned oil and gas rights to 27 acres.
>
> . . . There was no breach of contract as [Appellee] tendered payment for the undisputed quantity of acreage containing oil and gas rights actually owned by [Appellant].

Id. at 18.

We agree. None of Appellant's extensive quotations of the "evidentiary record" present any specific evidence showing ownership of all 114 acres. Indeed, some of these quoted sources contradict Appellant's own argument. First, the quoted portion of Appellant's response to the interrogatory merely "incorporates by reference all of the allegations in [its] Amended Complaint" and other answers to interrogatories. See Appellant's Brief at 16. The quoted response also includes non-relevant argument that Appellee recorded the lease "with the intention of encumbering the entirety of [Appellant's] property while tendering payment for only part of [the] property." See id. Second, the quoted portion of Ann Murphy's deposition testimony includes her statements that she "would assume" Appellant owns oil and gas rights but, when asked to confirm, she did not know. Id. at 22. Third, the quoted portions of the summary judgment hearing transcript include: (1) counsel's admission that even if Ann Murphy were called to testify, Appellant could not establish ownership of the remaining 87 acres; (2) counsel's non-relevant argument that it was Appellee who sought to enter the lease with Appellant; and (3) discussion of the alleged oral "settlement agreement." See id. at 23-27.

Finally, we note the quoted portions of Timothy Murphy's deposition testimony include his belief that Appellant retained all oil and gas rights. See Appellant's Brief at 18, 20. However, Appellant does not address how this testimony was "sufficient evidence" in light of Appellant's own on-the-record

concession that it did not own oil and gas rights to all 114 acres. See Seneca Res. Corp., 122 A.3d at 378; N.T. at 21, 32, 43. We further agree with the trial court's analysis that Appellee did not breach the terms of the contract by tendering payment for only 27 acres. See Seneca Res. Corp., 122 A.3d at 379; Trial Ct. Op. at 18.

Appellant's second claim on appeal is that the trial court erred in denying it "declaratory relief for the amounts [Appellee] owed . . . under the parties' agreements." Appellant's Brief at 27 (capitalization removed). Appellant's entire discussion spans two paragraphs and avers: "The evidentiary record proves the existence of the lease between [the parties] and [Appellee's] failure to comply with its obligations under the lease to pay [Appellant] the full amount of the lease . . . ." Id. at 28.

We incorporate our discussion above and likewise conclude no relief is due on Appellant's second claim. We reject Appellant's assertion that the evidentiary record shows a failure by Appellee to comply with the lease. See Seneca Res. Corp., 122 A.3d at 379; Trial Ct. Op. at 18. Rather, Appellee properly tendered payment for the oil and gas rights to the 27 acres Appellant actually owned.

Appellant's third claim is that the trial court erred in entering summary judgment for Appellee on the claims of breach of contract and breach of implied duty of good faith and fair dealing. Appellant's Brief at 29. It maintains Appellee breached the terms of the written lease. For the reasons

set forth above, we conclude no relief is due. See Seneca Res. Corp., 122 A.3d at 379; Trial Ct. Op. at 18.

Appellant's fourth, fifth, and sixth issues challenge the trial court's entry of summary judgment on its claims of breach of contract, breach of implied duty of good faith and fair dealing, promissory estoppel, fraud, and deceit. Appellant's Brief at 31, 33-34, 36. These claims relate to the alleged oral "settlement agreement," which Appellant avers is not subject to the statute of frauds. Id. at 32-33. Appellant argues the following. Appellee "represented it would, at a minimum, agree to a new lease with [Appellant] to lease the 27 undisputed acres[, and] then even agreed it would lease another 41 acres for an additional $145,000, which acreage [Appellee] apparently realized it should have paid for in the first place." Id. at 35. Based on these representations, Appellant agreed Appellee "could file the lease surrender to allow the new lease to be signed for the 68 acres[.]" Id. However, Appellee then "ignored its promises and advised [Appellant] that it would not lease any acreage from" it. Id. at 36. This "evidence proves [Appellee's] fraudulent conduct and fraudulent inducement of [Appellant] to enter an agreement to resolve the parties' payment dispute and . . . the illegal encumbrance on all of [Appellant's] property caused by [Appellee's] recording of the lease[.]" Id. at 38.

> At the summary judgment hearing, Appellee cited Nolt for
>
> the long tradition of treating oil and gas leases as the sale of an estate in land subject to the general statute of frauds codified at

> 33 P.S. § 1. This conclusion is bolstered by this Court's determination that the assignment of an oil and gas lease must be in writing.

See Nolt, 96 A.3d at 1047 n.3; N.T. at 10-11. Nolt also noted: "The Statute of Frauds instructs that a purported transfer of an ownership interest in real property is not enforceable unless evidenced in writing and signed by the parties granting the interest." Nolt, 96 A.3d at 1047, quoting Long v. Brown, 582 A.2d 359, 361 (Pa. Super. 1990). Appellant responded the oral agreement was not "a second new lease," but rather a "settlement agreement," which was not required to be in writing. N.T. at 40-41.

Reviewing the record in the light most favorable to Appellant as the non-moving party, it is undisputed that the alleged oral agreement addressed the assignment or lease of oil and gas rights. See Seneca Res. Corp., 122 A.3d at 378. By Appellant's own description, the agreement was that Appellee would "agree to a new lease" and "file the lease surrender" of the existing lease. Appellant's Brief at 35. Accordingly, contrary to Appellant's contention, we conclude such an agreement was subject to the statute of frauds, and the parties' alleged oral agreement was not enforceable. See Nolt, 96 A.3d at 1047 n.3. Therefore, the trial court properly entered summary judgment on Appellant's claims arising from the oral agreement.

We affirm the order granting Appellee's motion for summary judgment and dismissing Appellant's amended complaint with prejudice.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/11/2020